UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUTRY LEE JONES, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Civil Action No. 06-0621 (RWR)** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| through the DEPARTMENT OF JUSTICE, *et al.* ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

MOTION TO DISMISS IN PART OR, IN THE ALTERNATIVE,
FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE
FEDERAL BUREAU OF PRISONS AND INDIVIDUAL DEFENDANTS

Plaintiff, a federal prisoner now confined in Otisville, New York, brings suit under 28

U.S.C. 1331 and *Bivens*, alleging, *inter alia*, that his constitutional rights were violated and he

was retaliated against during his previous confinement at United States Penitentiary Pollock, a

federal prison located in the Middle District of Louisiana. *See* Compl. ¶¶ 1(a-h), 28-29.

Defendants hereby move, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (4), (5), and (6), to

dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, improper

venue, insufficiency of service of process, and failure to state a claim upon which relief can be

granted. Alternatively, Defendants request that the Court enter summary judgment in favor of

the Defendants, pursuant to Fed.R. Civ. P. 56, because there is no genuine issue as to any

material fact and the Defendants are entitled to judgment as a matter of law. In the event that

the Plaintiff's claims are not dismissed, Defendants request that this case be transferred to the

Middle District of Louisiana.

*Pro se* Plaintiff should take notice that any factual assertions contained in the attached

supporting exhibits may be accepted by the Court as true unless the Plaintiff submits his own

affidavit or other documentary evidence contradicting the assertions therein.  *See Neal v. Kelly*,

963 F.2d 453 (D.C. Cir. 1992).  Furthermore, should this Court treat Defendant's Motion to

Dismiss as a motion for summary judgment, because of the attached exhibits, the Federal Rules

of Civil Procedure provide:

> Supporting and opposing affidavits shall be made on personal knowledge, shall
> set forth such facts as would be admissible in evidence, and shall show
> affirmatively that the affiant is competent to testify to the matters stated therein.
> Sworn or certified copies of all papers or parts thereof referred to in an affidavit
> shall be attached thereto or served therewith.  The court may permit affidavits to
> be supplemented or opposed by depositions, answers to interrogatories, or further
> affidavits.  When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere allegations or
> denials of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If the adverse party does not so
> respond, summary judgment, if appropriate, shall be entered against the adverse
> party.

Fed. R. Civ. P. 56(e); *see Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) ( *pro se* party may

lose if he fails to respond to a dispositive motion); Local Rule 56.1 ("the court may assume that

facts identified by the moving party in its statement of facts are admitted, unless such a fact is

controverted in the statement of genuine issues filed in opposition to the motion").

In support of this Motion, the Court is referred to the (1) accompanying Memorandum of Points and Authorities, (2) attached Exhibits and Declarations, and (3) proposed Order attached hereto.

Respectfully submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/ Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
555 Fourth St., N.W., Room E4821
Washington, D.C.  20530

Of Counsel:
Alma Lopez, Esq.
Assistant General Counsel
Federal Bureau of Prisons
Washington, D.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AUTRY LEE JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Civil Action No. 06-0621 (RWR)** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| through the **DEPARTMENT OF JUSTICE,** *et al.* | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF THE FEDERAL BUREAU OF PRISONS AND INDIVIDUAL DEFENDANTS'
## MOTION TO DISMISS IN PART OR, IN THE ALTERNATIVE,
## FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Autry Lee Jones, proceeding *pro se*, brings this suit against the United States,

through the Department of Justice, and individual Defendants H. Lappin, D. Roach, D. Lair, R.

McGowan, J. Flatter and Chief Trust Fund Officer of the Inmate Trust Fund under 28 U.S.C.

1331[1] and *Bivens*.[2]  Plaintiff's first allegation concerns the constitutionality of the one-year

statute of limitations for filing federal habeas corpus petitions.  Compl. ¶¶ 1(a-h), 28-29.

Additionally, Plaintiff alleges that, during the period December 16, 1997, through February 15,

2005, while he was confined at the United States Penitentiary Pollock, a federal prison located in

the Middle District of Louisiana, he was denied equal protection and due process concerning a

disciplinary infraction regarding inmate count slips; prison officials retaliated against him for

filing administrative remedies by underpaying him and not permitting him to work overtime;

prison funds were spent on items that do not benefit the inmate population as a whole, resulting

---

[1]This statute confers "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" on district courts.

[2] *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971).

in an increase in the inmate telephone rate to 23 cents per minute; and prison officials violated his right to receive adequate medical care.  *See* Compl. ¶¶ 5(e), 10(a),(f), 11(a),(b),(d), 28-29, 44, 66.

Defendants hereby move, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (4), (5), and (6), to dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted.  Alternatively, Defendants ask the Court to enter summary judgment in their favor, pursuant to Fed.R. Civ. P. 56, because there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law.  Additionally, in the event this suit survives this dispositive motion, Defendants request this case be transferred to the District Court for the Middle District of Louisiana.

## BACKGROUND

Plaintiff Autry Lee Jones, Reg. No. 52873-080, was convicted in 1991 of Possession of Cocaine Base and Conspiracy to Possess Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 846.  *See* Exh. 1, Public Information Inmate Data.  On October 21, 1991, the United States District Court for the Western District of Texas sentenced Plaintiff to a life sentence, and he began to serve his sentence on November 8, 1991.  *See id.*   On December 4, 1992, the United States Fifth Circuit Court of Appeals affirmed Plaintiff's convictions and sentences.  *See United States of America v. Autry Lee Jones*, 980 F.2d 1444 (5th Cir.1992), *cert denied*, *Jones v. United States*, 507 U.S. 1040 (1993).  In 1997, Plaintiff filed a motion to vacate the judgment, which was denied.  *See United States of America v. Autry Lee Jones*, No. 1:90-CR-00177 (U.S.D.C., W.D.Tex); *see also Autry Lee Jones v. United States of America*, 1:97-CV-00579 (U.S.D.C.,

W.D.Tex).  On May 5, 1998, in an unpublished opinion, the United States Court of Appeals for

the Fifth Circuit affirmed the judgment of the district court.  *See United States of America v.*

*Autry Lee Jones*, No. 97-50132 (5th Cir.1998).  Over ten years later, on October 26, 2006,

Plaintiff filed a petition for habeas corpus relief.  *See Jones v. Menifree*, 06-CV-1985 (W.D. La).

On December 29, 2006, an order was entered denying Plaintiff's habeas corpus petition,

dismissing the petition with prejudice, and barring Plaintiff from filing further actions without

prior approval from the court.  *Id.*, Dkt Entry No. 6.

Plaintiff subsequently filed this action on April 3, 2006, alleging 1) the one-year statute of

limitations provision governing the filing of federal habeas corpus petitions is unconstitutional;

2) denial of equal protection and due process concerning a disciplinary infraction regarding

inmate count slips; 3) retaliation by prison officials for filing administrative remedies, in terms of

being underpaid and not being permitted to work overtime; 4) expenditure of prison funds on

items that do not benefit the inmate population as a whole, resulting in an increase in the inmate

telephone rate to 23 cents per minute; 5) violation by prison officials of Plaintiff's right to

receive adequate medical care.  *See* Compl. ¶¶ 5(e), 10(a),(f), 11(a),(b),(d), 28-29, 44, 66.

Each of the alleged events underlying the Complaint appears to have occurred while Plaintiff was

incarcerated at USP Pollock in Louisiana.  *Id.*

## STANDARD OF REVIEW

### A.     Dismissal Under Rule 12(b)(1).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff

bears the burden of establishing that the court has subject matter jurisdiction. *District of*

*Columbia Ret. Bd. v. United States*, 657 F. Supp. 428, 431 (D.D.C. 1987).  In considering a

motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all material

factual allegations in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986),

vacated on other grounds, 482 U.S. 64 (1987).  A court may also consider materials outside the

pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case.

*Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Haase v. Sessions*,

835 F.2d 902, 906 (D.C. Cir. 1987); *Borg-Warner Protective Servs. Corp. v. EEOC*, 81 F. Supp.

2d 20, 23 (D.D.C. 2000).

### B.      Dismissal Under Rule 12(b)(6).

Under Rule 12(b)(6), the Court is to treat a complaint's factual allegations as true, *see*

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164

(1993), and must grant a plaintiff "the benefit of all inferences that can be derived from the facts

alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.1979).  However, "the Court

need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts

alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions."  *Akintomide*

*v. United States*, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing

*National Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) and

*Kowal v. MCI Communication Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

In deciding the motion, the court may consider additional evidence.  *See Arizmendi v.*

*Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("In resolving a Rule 12(b)(6) motion to

dismiss, a court may properly look beyond the complaint to matters of public record including

court files, records and letters of official actions or decisions of government agencies and

administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

### C.    Dismissal Under Rule 56

Under Federal Rule of Civil Procedure 56©, summary judgment is appropriate if there is "no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). In deciding on a summary judgment motion, the fact-finder must draw inferences from the record in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Celotex Corp.*, 477 U.S. at 330.

There is no genuine issue of material fact if the relevant evidence, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Mere allegations or denials in the non-moving parties' pleadings are insufficient to defeat an otherwise proper motion for summary judgment. *Matsushita*, 475 U.S. at 586. Where the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50; *see also Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C. Cir. 1998). Where the factual context renders his position implausible, the party opposing summary judgment must come forward with strong persuasive evidence to defeat it. *Matsushita*, 475 U.S. at 587.

**ARGUMENT**

**I.    This Case Should Be Dismissed on Jurisdictional Grounds**.

    **A.    The Doctrine of Sovereign Immunity Bars Plaintiff's Claims.**

It is fundamental, under the doctrine of sovereign immunity, that the United States cannot be sued without its consent. *United States v. Testan*, 424 U.S. 392 (1976)("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction...to entertain suits against the United States'")(quoting *Sherwood*); *United States v. Sherwood*, 312 U.S. 584 (1941)(the United States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit."); *Settles v. United States Parole Commission*, 429 F.3d 1098, 1106 (D.C. Cir. 2005)(sovereign immunity blocks a §1983 claim against the U.S. Parole Commission); *Skwira v. United States*, 344 F.3d 64, 72 (1st Cir. 2003); *Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999); *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). Any governmental waiver of sovereign immunity must be unequivocal, and strictly construed. See, e.g., *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Williams*, 514 U.S. 527, 531 (1995). Where the federal government waives its immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981). Such waivers are construed strictly in favor of the sovereign. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986).

Plaintiff's claims for monetary damages against the United States must be dismissed, absent a waiver of sovereign immunity. *Meyer*, 911 F.Supp. at 11; *Marshall*, 915 F.Supp. at

426; *Deutsch v. U.S. Dep't of Justice*, 881 F.Supp. 49, 55 (D. D.C. 1995). The inherent sovereign immunity of the United States protects it and its agencies from suit absent express waiver. *See Clark v. Library of Congress*, 750 F.2d 89, 102-104 (D.C. Cir. 1984) (sovereign immunity acts as a bar to a damages remedy against the Librarian of Congress in an official capacity); *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (a constitutional tort claim is not cognizable under the FTCA); *Settles v. U.S. Parole Commission*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) (sovereign immunity bars statutory claims against a government agency); *United States v. Nordic Village*, 503 U.S. 30 (1992). Plaintiff's Complaint does not contain any colorable basis for such a waiver and, as discussed *infra*, Plaintiff has not sustained any constitutional injury which would merit monetary damages. Therefore, Plaintiff's claims for damages must be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

**B.    The Court Lacks Personal Jurisdiction over the Individual Defendants.**

**1.    Insufficiency of Process and Insufficiency of Service of Process**

Individually-named federal defendants, sued in their personal capacities, must be served with process in accordance with rules applicable to individual defendants. *See Simpkins v. District of Columbia Government*, 108 F.3d 366, 369 (D.C. Cir. 1997)(defendants in *Bivens* action must be served as individuals, pursuant to Fed. R. Civ. P. 4(e)). Rule 4(e)(2) of the Federal Rules of Civil Procedure requires that a copy of the summons and complaint be delivered to a defendant (or his appointed or legal agent) personally, or be left "at his dwelling house or actual place of abode with some person of suitable age and discretion" who resides there. Rule 4(e)(1) would permit service in this case in accordance with the service rules for the court of general jurisdiction for the District of Columbia. Service on the Attorney General of the United

States and the U.S. Attorney for the district in which the action is brought, pursuant to Fed. R.

Civ. P. 4(I) "does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1)

where the action is in substance against a federal official in his individual capacity." *See*

*Lawrence v. Acree*, 79 F.R.D. 669, 670 (D. D.C. 1978); *Simpkins*, 108 F.3d at 369.   Similarly,

service at a place of business does not satisfy the service rule.

  Plaintiff bears the burden of pleading the facts necessary to substantiate *in personam*

jurisdiction in this Court.  *See Kernan v. Durz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999);

*Masterson-Cook v. Criss Brothers Iron Works, Inc.*, 722 F.Supp. 810, 813 (D.D.C. 1989).  As

explained by the U.S. Supreme Court in *McNutt v. General Motors Acceptance Corp*.:

> If [a plaintiff's] allegation of jurisdictional facts are challenged by his adversary in any
> appropriate manner, he must support them by competent proof.  And where they are not
> so challenged the court may still insist that the jurisdictional facts be established or the
> case be dismissed, and for that purpose the court may demand that the party alleging
> jurisdiction justify his allegations by a preponderance of evidence.

*McNutt v. GMAC*, 298 U.S. 178, 189 (1936).  The law is clear that service upon an individual is

not effected by leaving a copy of the complaint in his or her place of business with one who has

not been specifically appointed as the individual's personal agent for that purpose.  *See*

*Leichtman v. Koons*, 527 A.2d 745, 747 and n.5 (D.C. 1987)(office employee with authority to

receive business mail does not, by virtue of that position, have authority to receive process, and

actual knowledge of the existence of a lawsuit is no substitute for personal service). Contacts

with the forum state caused by the performance of official duties do not establish personal

jurisdiction, as they do not result from the official purposefully availing himself of opportunities

or privileges offered from the forum state.  *See Ecclesiastical Order of the Ism of Am, Inc. v.*

*Chasin*, 845 F.2d 113, 116 (6th Cir. 1988); *Green v. McCall*, 710 F.2d 29, 33 (2d Cir. 1983).

A check of the PACER docket in this case reveals that Plaintiff has not personally served Defendants Lappin, Roach, Lair, McGowan, Flatter, and Chief Trust Fund Officer of Inmate Trust Fund, for any individual capacity claims. Accordingly, because Plaintiff has failed to effect proper service on any of the individual defendants, the claims against each of these Defendants, in their individual capacities, must be dismissed pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(4) and 12(b)(5).

> **2.      The Court Lacks Personal Jurisdiction Over Defendants Roach, Lair, McGowan and Flatter, Who Reside in Louisiana.**

Plaintiff cannot meet his burden to establish that this Court has personal jurisdiction over individually-named BOP Defendants Roach, Lair, McGowan and Flatter, who reside in Louisiana, not in the District of Columbia. In personam jurisdiction may be maintained by the United States District Court for the District of Columbia over nonresidents of the District only if permitted by the "long arm" laws of the District of Columbia. *Bolling-Bey v. U.S. Parole Com'n,* Civil Action No. 06-1732(JDB), 2006 WL 1030122, *3 (D.D.C. April 19, 2006); *Dove v. United States*, No. 86-0065-LFO, 1987 WL 18739, *1-2 (D.D.C. Oct. 9, 1987). The District of Columbia exercises personal jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

9

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety ...; or

(7) marital or parent and child relationship ...

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

Plaintiff has not demonstrated that Defendants Roach, Lair, McGowan and Flatter are residents of the District of Columbia, transact any business within this jurisdiction, or maintain a place or places of business within this jurisdiction. *See, e.g. Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. June 14, 2002). Similarly, there is no *act* and *injury* alleged to have been committed by Defendants Roach, Lair, McGowan and Flatter within the District of Columbia. The injuries Plaintiff complains of took place in Louisiana, where Plaintiff was previously incarcerated. *See* Compl. generally. Because these four Defendants do not work or reside within the District of Columbia, and the events complained of did not occur within the District of Columbia, there is no basis under the District of Columbia Code's "long arm" statute to confer in personam jurisdiction in this Court. *Bolling-Bey*, 2006 WL 1030122, 3-4; *Zhu v. Gonzales*, Civil Action No. 04-1408(RMC), 2006 WL 1274767, *5-6 (D.D.C. May 8, 2006). Accordingly, these four Defendants must be dismissed pursuant to Fed.R.Civ.P. 12(b)(2).

**C.    Plaintiff's Claim Against An Unnamed  "Chief Trust Fund Officer of the Inmate Trust Fund" Must Fail.**

Plaintiff also names the "Chief Trust Fund Officer of the Inmate Trust Fund" as a

Defendant.  *See* Compl. caption, ¶¶ 4, 22, 33.  The general rule is that a complaint must name all

the parties. Fed. R. Civ. P. 10(a); *Roe v. New York*, 49 F.R.D. 279, 281-282 (S.D.N.Y. 1970);

*but cf., M.K. v. Tenet*, 99 F. Supp.2d 12, 17-18 (D.D.C. 2000).  Plaintiff has not demonstrated a

compelling reason for his failure to individually name this Defendant in the Complaint.  Further,

Plaintiff has failed to establish that proper personal service over this unnamed person was ever

effected, and consequently has failed to establish that the Court has personal jurisdiction over this

unnamed person.  Therefore, Plaintiff's claims with respect to the Chief Trust Fund Officer of the

Inmate Trust Fund" should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), (4).[3]

Additionally, it appears that sufficient grounds exist to dismiss this claim under Rule 8(a)

of the Fed. R. Civ. P.  The principal function of a Complaint is to give the Defendant "fair notice

of the claim being asserted so as to permit the adverse party the opportunity to file a responsive

answer, prepare an adequate defense, and determine whether the doctrine of res judicata is

applicable." *Brown v. Califfano*, 75 F.R.D.  497, 498 (D.D.C. 1977) (dismissing *pro se*

Plaintiff's complaint because it failed to reasonably inform the adverse party of the cause of

---

[3]It is well-established that, in an action against a federal employee in his or her individual capacity, the individually sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Service on the U.S. Attorney in the district where the action was brought pursuant to Fed. R. Civ. P. 4(I) "does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1) where the action is in substance against a federal official in his individual capacity".  *See Lawrence v. Acree*, 79 F.R.D. 669, 670 (D. D.C. 1978). It is equally well-established that the plaintiff must bear the burden of establishing the Court's personal jurisdiction over the defendant.  *See McNutt v. General Motors Acceptance Corporation*, 298 U.S. 178, 182 (1936); *Tavoulareas v. Comnas*, 720 F.2d 192, 195 (D.C. Cir. 1983).

action), (*citing* 2A Moore, Federal Practice ¶ 8.13; 5 Wright & Miller, Federal Practice and

Procedure, § 1217).  Rule 8(a) sets forth the general standards that a complaint filed in federal

court must meet, including "a short and plain statement of the grounds upon which the court's

jurisdiction depends" and "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a).  As the Supreme Court recently clarified in *Bell Atlantic*

*Corp. v. Twombly*,

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions . . . . [f]actual allegations must be
> enough to raise a right to relief above the speculative level on the assumption that
> all of the complaint's allegations are true . . . .

127 S. Ct. 1955, 1959 (U.S. May 21, 2007) (NO. 05-1126).  The Supreme Court further

elaborated that this standard "reflects Rule 8(a)(2)'s threshold requirement that the 'plain

statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.*

Lastly, it is unclear from the Complaint whether the Plaintiff is referring to the "Chief

Trust Fund Officer of the Inmate Trust Fund" at the Pollock, LA facility; at the BOP

headquarters in Washington, D.C.; or at some other facility or location. Clearly, the Complaint

fails to provide this particular Defendant with clear and adequate notice of all the facts

underlying the Complaint, and the applicable law at issue.  *See Sparrow v. United Air Lines, Inc.*,

216 F.3d 1111 (D.C. Cir. 2000)(under Rule 8, Plaintiff is required to give the Defendant fair

notice of each claim and its basis.)(citations omitted).  In similar circumstances, courts have

dismissed complaints*. See e.g., Breslin v. City and County of Philadelphia*, 92 F.R.D. 764, 765

(E.D. Pa. 1981) (dismissing DoE defendants because of due process concerns).  *See, e.g.,*

*Armstrong v. United States Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997).

12

**D.    Plaintiff's Claims Should Be Dismissed Because Venue Is Improper.**

Venue in *Bivens* cases is governed by 28 U.S.C. § 1391(b).  *See Stafford v. Briggs*, 444 U.S. 527, 544 (1980); *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993); *Pollack v. Meese*, 737 F. Supp. 663, 665 (D.D.C. 1990).  Under § 1391(b), a *Bivens* cause of action may be brought only in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought.  *See* 28 U.S.C. § 1391(b).  Because Plaintiff cannot establish that all Defendants reside in the same state, or that a substantial part of the events underlying the complaint occurred in the District of Columbia, Plaintiff's *Bivens* claims must be dismissed.

First, as discussed *supra*, Defendants Roach, Lair, McGowan and Flatter lived and worked in Louisiana at all times relevant to this lawsuit.  Since four of the five individually-named BOP Defendants reside outside of the District of Columbia, the Defendants' place of residence cannot be a basis for venue.  *See Cameron*, 983 F.2d at 256; *Zakiya v. U.S.*, 267 F.Supp.2d 47 (D.D.C. 2003);  *Reuber v. U.S., et al.*, 750 F.2d 1039 (D.C. Cir.1984); *James v. Reno, et al.*, 1999 WL 615084 (D.C. Cir. 1999) (mere fact that defendants are employees of the BOP based in D.C. insufficient to establish requisite "minimum contacts" with District);  *Meyer v. Reno*, 911 F.Supp. 11, 14 (D.D.C. 1996) (no jurisdiction over BOP employee or State Attorneys where no business and no injury occurred in the District of Columbia).

Second, none of the alleged events or omissions giving rise to the claim occurred in the District of Columbia.  Instead, the alleged equal protection and due process violations, inadequate medical care, and retaliation all occurred in the Middle District of Louisiana,

specifically at USP Pollock, Louisiana, where Plaintiff was incarcerated. *See* Compl. ¶¶ 5(e), 10(a),(f), 11(a),(b),(d), 28-29, 44, 66. Since none of the alleged events or omissions giving rise to the claim occurred in the District of Columbia, the place where the events or omissions took place cannot be a basis for venue. Clearly, this action should have been brought in the Middle District of Louisiana. Therefore, because venue is improper in this Court, Plaintiff's *Bivens* claims should be dismissed under Federal Rule of Civil Procedure 12(b)(3).

### E.    The Individual Defendants Are Entitled to Qualified Immunity in Their Individual Capacities.

The individually named Defendants are entitled to qualified immunity from damages based on Plaintiff's constitutional claims. *See Forrester v. White*, 484 U.S. 219, 230 (1988). The framework for application of qualified immunity to such claims is set out in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In that case, the Supreme Court confirmed that government officials are shielded from liability for civil damages for constitutional violations insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Id.* at 818. Moreover, under *Harlow* this determination requires an objective, not subjective, analysis. *Davis v. Scherer*, 468 U.S. 183, 191 (1984); *Krohn  v. United States*, 742 F.2d 24 (1st Cir. 1984); *McSurley v. McClellan*, 697 F.2d 309, 316 (D.C. Cir. 1982). *Harlow* thus places squarely on a plaintiff the burden of showing a "prima facie case of defendants' knowledge of impropriety, actual or constructive." *Krohn*, 742 F.2d at 31-32; *Davis v. Scherer*, 468 U.S. 183, 191 (1984). Furthermore, as the Supreme Court has held:

> Unless the plaintiffs' allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).[4]

The paramount point to keep in mind in analyzing claims such as Plaintiff's, therefore, is that neither the Court nor the Plaintiff can engage in an inquiry into the state of mind of Defendants in resolving the "threshold" resolution of qualified immunity claims. *Harlow, supra*, 457 U.S. at 818. Subjective inquiries are legally irrelevant. The only inquiry of any import is whether the Defendant's alleged actions violated clearly established law or were objectively reasonable. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Further, as the Supreme Court and the Court of Appeals have both stated,

> [t]he contours of the rights [the official is alleged to have violated] must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.

*Anderson v. Creighton*, 483 U.S. at 640; *Martin v. Malhoyt,* 830 F.2d at 253. Thus, even though plaintiff's Fourth Amendment rights were violated in *Anderson*, the Supreme Court held that the defendant officers were entitled to qualified immunity from suit individually because they acted reasonably.

Review of the applicable law and the allegations as presented in Plaintiff's Complaint demonstrates that the individually named Defendants Lappin, Roach, Lair, McGowan and Flatter did not violate a clearly established constitutional right to which Plaintiff avers he is entitled. Inmates do not have a clearly established constitutional right to employment that would entitle

---

[4]A defendant's right is to "immunity from suit" not a "defense to liability." *Id.; see also Cleavinger v. Saxner, supra*, 474 U.S. at 207-208.

15

them to due process protection.  *See Bulger*, 65 F.3d at 50 ("Courts of appeals consistently have held that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest"); *James v. Quinlan*, 866 F.2d 627, 639 (3d Cir. 1989) *cert. denied* 459 U.S. 1150; *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986); *Garza*, 688 F.2d at 485-86 (no property or liberty interest in prison employment); *Ingram v. Papalia*, 804 F.2d 595-96 (10th Cir. 1986) (U.S. Constitution does not create a property interest in prison employment); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980); *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975) (finding inmate's expectation of keeping a job is not a property interest subject to due process protection).  Nor do inmates have a constitutional right to receive compensation for their work.  *Manning v. Lockhart,*  623 F.2d 536, 538 (8th Cir., 1980), *relying on Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir. 1968), *cert. denied*, 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969) (prisoner has no constitutional right to be paid for his prison labor and such compensation is by grace of the state).

Further, inmates do not have a clearly established constitutional right to the medical treatment of their choice. *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981).  While inmates are protected under the Eighth Amendment from cruel and unusual punishment stemming from deliberate indifference to a medical need, a prisoner does not have a right to treatment of his choice.  *See* discussion, *infra*.  Thus, because Defendants Lappin, McGowan, Lair, Roach, and Flattery did not engage in actions which violated Plaintiff's constitutional rights, the Defendants are entitled to qualified immunity.

**F.     If the Plaintiff's Claims Are Not Dismissed, this Action Should Be Transferred to the Middle District of Louisiana.**

Historically, the District of Columbia Circuit and this Court have expressly rejected the notion that inmates incarcerated in other jurisdictions can challenge their conditions of confinement in this district simply because it is the location of the BOP Central Office. *See Starnes v. McGuire,* 512 F.2d 918, 925-926 (D.C. Cir. 1974). The BOP houses approximately 200,000 inmates in more than 100 institutions nationwide. As the District of Columbia Circuit Court has stated, "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron,* 983 F.2d at 256. Indeed, the District of Columbia Circuit has recognized that "many, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate." *Starnes v. McGuire,* 512 F.2d at 926.

If the action is not dismissed, the Court should transfer this suit to the District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and the witnesses, and in the interest of justice. *Id.* at 927-31 (in assessing whether transfer is appropriate in prisoner cases, the court should consider such factors as the difficulty in communicating with counsel, difficulty in transferring the prisoner, the availability of witnesses and files and speed of final resolution). Plaintiff challenges actions witnessed by individuals located in the State of Louisiana, that allegedly caused injury to Plaintiff in the State of Louisiana. Moreover, Plaintiff challenges decisions made by prison administrators who work and reside in Louisiana. In the event that testimony of USP Pollock officials becomes necessary

17

to resolve this suit, to allow this suit to proceed in the District of Columbia would invite the Court to rule on the constitutionality of actions taken by Defendants over whom this Court has no jurisdiction.  As all of the evidence and witnesses are located in Louisiana, the most appropriate forum for this suit is in the District Court for the Middle District of Louisiana.  *Id.* at 931 (where testimony or files are required "the district in which the institution is located will ordinarily be the more convenient forum.").

### G.    Claims Against Lappin Must Be Dismissed Because the Doctrine of *Respondeat Superior* Is Inapplicable in *Bivens*.

To maintain a suit for damages against Defendant Lappin in his individual capacity, Plaintiff must allege, and ultimately prove, that Lappin was directly and personally responsible for the alleged constitutional violation. *See Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987). Supervisory personnel may not be forced to defend a *Bivens* action under the doctrine of *respondeat superior*.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  Plaintiff's Complaint makes several conclusory allegations against Lappin, including that Defendant Lappin spent money for unauthorized items from the trust fund account thereby resulting in an increase of the telephone rates; retaliated against Plaintiff by refusing to allow him to work overtime because Plaintiff filed an administrative remedy; ordered Defendant Roach to wrongfully calculate Plaintiff's pay for piece work on overtime; and did not afford Plaintiff equal protection or due process, respectively, as other inmates with count slips were not disciplined and Plaintiff did not receive notice of what "he could and could not do with said slips."  Compl.¶ 3(a), (b), (e) and (f).

Defendant Lappin is the Director for the Bureau of Prisons and works in Washington, D.C.  The role of the BOP Director is to perform "highly sensitive and unusually complex

assignments involving the establishment, implementation or analysis of alternative solutions for

major penal administration." *See* Exh. 21, Director's Position Description.  As Director,

Defendant Lappin does not become personally or directly involved in the day to day operations of

the institutions operations, disciplinary proceedings, or decisions involving inmate medical care

at individual prisons over which he has oversight authority, including any decisions relating to

Plaintiff's allegations.  *Id.*  Instead, Director Lappin is "responsible for the total operations of the

prison system nation-wide" and together with the Executive staff, "develop[s] and implement[s]

plans, policies and programs for total system operations."  *Id.*   For these reasons, Plaintiff's

allegations that Director Lappin ordered Defendant Roach to miscalculate Plaintiff's overtime

and deny Plaintiff permission to work overtime are clearly without merit and must be dismissed.

Plaintiff has failed to present any basis to establish that defendant Lappin was personally

involved or had knowledge of the alleged constitutional violations and failed to take any actions.

Moreover, Defendant Lappin cannot be held personally liable for constitutional torts of prison

employees, as there is no *respondeat superior* liability under *Bivens*.  *Monell v. Department of

Social Services*, 436 U.S. 658 (1978); *Cameron, supra*.

  In *Cameron*, the D.C. Circuit dismissed the Attorney General and the Director from the

suit because the complaint failed to allege their personal involvement.  *Id.* at 258.  Thus,

"[a]bsent any allegations that defendants Reno and Hawk personally participated in the events

which gave rise to the plaintiffs' claims, or any corroborative allegations to support the inference

that these defendants had notice of or acquiesced in the [constitutional violation], dismissal is

appropriate."  *Meyer*, 911 F. Supp. at 15.  Moreover, "[w]ithout a showing of direct

responsibility for the improper action, liability will not lie against a supervisory official.  A

causal connection, or an affirmative link, between the misconduct complained of and the official

sued is necessary." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

There is no support for Plaintiff's allegations that Defendant Lappin participated in the

decisions regarding Plaintiff's prison employment or overtime assignments, or that Defendant

Lappin spent any money from the inmate trust account. Rather, just as in the *Cameron* case, the

Plaintiff appears to base his claims against Defendant Lappin on the assumption that, based on

his position as Director of BOP, Defendant Lappin bears responsibility for the acts of his

subordinates. Mere conclusory allegations, without evidentiary support, are an insufficient basis

upon which to maintain a *Bivens* claim. *See Bivens v. Six Unknown Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971). As currently drafted, Plaintiff's Complaint fails to satisfy the

standard set forth by the Supreme Court, that a plaintiff's allegations must rise "above the

speculative level." *See Bell Atlantic Corp. v. Twombly,* 127 S. Ct. at 1959. Because Plaintiff's

Complaint is so vague and ambiguous with respect to the basis for the claims Plaintiff is

asserting against Defendant Lappin, Defendant Lappin has been deprived of an opportunity to

frame a substantive response. As Plaintiff has failed to substantiate his allegations, his claims

against Defendant Lappin should be dismissed for failing to comply with Rule 8(a).

Fed.R.Civ.P. 41(b).

**II.     The Complaint Should Be Dismissed Because Plaintiff's Complaint Fails on the**
**        Merits.**

**        A.     The One Year Statute of Limitations Governing Habeas Corpus Petitions Is**
**               Constitutional**.

Count I of Plaintiff's Complaint addresses Plaintiff's October 26, 2006, habeas corpus

petition, which was denied and dismissed by the Court of Appeals for the Fifth Circuit. *See*

20

*Jones v. Menifee*, *Slip Copy*, 2006 WL 3861770, *4 (W.D.La. 2006). Plaintiff contests the authority of the United States "to make up a law which restrict and/or hinder Plaintiff's right to petition the government to seek redress of grievance." Compl. ¶ 1(d). Plaintiff also seeks to "file a motion to correct his sentence and/or a writ of habeas corpus to determine that plaintiff is being held in violation of the United States Constitution." Plaintiff alleges his constitutional rights have been violated because he alleges he is innocent and was not in possession of cocaine base, but is unable to petition the courts and to have his petition heard on the merits in order to prove his innocence. Compl. ¶¶ 29, 44-46. Plaintiff further alleges he is being held in violation of the United States Constitution, and that the one year statute of limitations governing habeas corpus petitions is unconstitutional. Compl. ¶ 44.

First, to the extent Plaintiff challenges the decision of the Fifth Circuit Court of Appeals in his habeas petition, or alleges a habeas corpus claim, Plaintiff has filed suit in the wrong court. Plaintiff has already unsuccessfully appealed his conviction to the Supreme Court, which denied certiorari. As Plaintiff has had an opportunity to be heard on these issues, his present suit on these issues appears to be barred by either res judicata or collateral estoppel or both. *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C.Cir. 1983)("The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues."). Second, to the extent that Plaintiff is challenging the lawfulness of his custody, his case must either be dismissed or transferred to the jurisdiction where the prisoner's immediate custodian is located. *See Bourke v. Hawk Sawyer*, 269 F.3d 1074; *In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988); *Guerra v. Meese*, 786 F.2d 414 (D.C. Cir. 1986). Finally, Plaintiff's allegation that the one year statute of limitations governing the filing of federal habeas corpus petitions is

21

unconstitutional, depriving him of his ability to petition the courts and to have his petition heard on the merits in order to prove he is innocent, is also without merit. *See David v. Hall,* 318 F.3d 343, 347 (1st Cir. 2003) (where petitioner had ample time to file his habeas corpus petition arguing innocence "within the statutory deadline . . the [statute of] limitation is not even arguably unconstitutional."); *Lucidore v. New York State Division of Parole*, 209 F.3d 107, 113 (2nd Cir. 2000)("one-year statute of limitations leaves habeas petitioners with some reasonable opportunity to have their claims heard on the merits"); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003)("one-year limitations period leaves petitioners with a reasonable opportunity to have their federal claims heard.").

### B.    Defendants Did Not Violate Plaintiff's Right to Due Process and Equal Protection During the Unit Disciplinary Committee Hearing.

Plaintiff raises a due process and equal protection challenge concerning his possession of inmate outcount slips and the subsequent disciplinary action taken against him for his possession of inmate outcount slips, respectively.  Specifically, Plaintiff alleges that he was not afforded equal protection and due process because he was 1) not put on notice concerning the consequences for having outcount slips; 2) singled out, disciplined, and lost his job, for violating Code 305 "possession of anything not authorized," for possessing the count slips; and 3) not permitted to rebut evidence presented against him at the Unit Disciplinary Committee Hearing. Compl. ¶¶ 5(e); 10(a),(f); 11(a),(b)(d).  Plaintiff also asserts that "since staff gave the count slips to Plaintiff that Plaintiff was authorized to have same."  *Id.* at ¶ 10(d); ¶ 11(d).

1.      **The Defendants Provided Prior Notice of Proscribed Conduct Before Imposing Disciplinary Sanctions on Plaintiff**.

Due process requires prior notice of proscribed conduct before sanctions may be imposed. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). In the prison setting, courts have held that an inmate must have notice of prison regulations before he can be charged for violating those regulations. *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993); *Forbes v. Trigg*, 976 F.2d 308, 314 (7th Cir. 1992); *Coffman v. Trickey*, 884 F.2d 1057, 1060 (8th Cir. 1989). It is a violation of due process to sanction an inmate for an act he could not have known was prohibited. *Reeves v. Pettcox*, 19 F.3d 1060, 1061 (5th Cir. 1994); *Adams v. Gunnell*, 729 F.2d 362, 369-70 (5th Cir. 1984). However, courts have applied a more relaxed standard to prison regulations than to criminal law standards when deciding if a prison regulation is vague such that it violates due process. *Meyers v. Alldredge,* 492 F.2d 296, 310 (3rd Cir.1974). In *Wolfel v. Morris* the Sixth Circuit explained,

> Generally, due process prohibits excessively vague laws. However, the degree of specificity required in prison regulations is not the same as that required in other circumstances: Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. As such, it is nearly impossible for prison authorities to anticipate, through narrowly drawn regulations, every conceivable form of misconduct which threatens prison security.

*Wofel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992) (quoting *Meyers,* 492 F.2d at 310).

The Code of Federal Regulations sets forth the kinds of personal property inmates are allowed to have in their possession. 28 C.F.R. § 553.10 *et seq., see also* Exh. 17, BOP Program

23

Statement 5580.06, *Personal Property, Inmate,*(7/19/99)(the policy in effect at the time the plaintiff received his disciplinary incident report).  The regulations generally explain that

> . . . an inmate may possess ordinarily only that property which the inmate is authorized to retain upon admission to the institution, which is issued while the inmate is in custody, which the inmate purchases, which the inmate purchases in the institution commissary, or which is approved by staff to be mailed to, or otherwise received by an inmate.

28 C.F.R. § 553.10 and PS 5580.06, at 1.  The policy more specifically provides a list of the items inmates are authorized to have in their possession during their incarceration.[5]

Inmate count slips are official documents generated by the BOP computerized system and used by the BOP staff to document the number of inmates located in specific areas during official counts, and to ensure all inmates are in their designated areas.   *See* Exh 24, Declaration of Linda Thomas, Administrator of the Correctional Services Branch, ¶ 4, 5.  Plaintiff alleges that he was not given notice that possession of the inmate outcount slips was prohibited, and further alleges that staff gave him the inmate outcount slips.  Compl. ¶¶ 5(e); 10(a),(f); 11(b),(d).  However, BOP policy clearly lists the items inmates are allowed to possess.  *See* Exh. 17, BOP Program Statement 5580.06, Personal Property, Inmate,(7/19/99).   Plaintiff received notice of this policy, as this policy is available to the inmate population in the inmate library.  Plaintiff's possession of the inmate outcount slips was not authorized under the BOP policy and threatened the security of the institution, as an inmate in possession of a count slip could easily alter the count slip which would change the number of inmates located in specific areas during official counts.  *See* Exh. 24, Thomas Decl. ¶¶ 4, 5.  Contrary to Plaintiff's allegations, inmates are not allowed to possess inmate outcount slips.  *Id.* ¶ 5.   In the investigation conducted of Plaintiff's disciplinary incident

---

[5] Attachment A to the Program Statement 5580.06, contains the list of approved items for inmate retention.

report, Plaintiff admitted he took the inmate outcount slips from the UNICOR trash can and admitted that inmates are not authorized to take items staff discard in trash cans. *See* Exh. 20, Incident Report at 2, ¶ 24. Plaintiff's allegation that he did not receive notice about the outcounts slips should be dismissed.

### 2.    Defendants McGowan and Lair Did Not Violate the Plaintiff's Due Process Rights to Present Evidence in the Unit Disciplinary Committee Hearing.

In *Wolff v. McDonnell*, the Supreme Court created a framework for the disciplinary procedures at penal institutions, in order to ensure that inmates receive the minimum procedural due process under the law. 418 U.S. 539, 563-71 (1974). The Court was concerned that inmates receive advance notice of the alleged violation, a written statement of the fact finders about the evidence relied upon, and the rationale behind the disciplinary action taken, and that the prisoner be allowed to have witnesses at the hearing and present documents in his defense, subject to the secure and orderly running of the institution. *Id.* at 563, 566. The Court also ruled that in complex hearings, the inmates should be allowed to receive assistance from other inmates, and if this is not allowed, from a staff member. *Id.* at 570.

The Code of Federal Regulations specifically addresses the procedure the BOP follows in Unit Disciplinary Committee (UDC) hearings. 28 C.F.R. § 541.15. *See also* Exh. 6, Program Statement 5270.07, *Inmate Discipline and Special Housing Unit* (December, 1987). In accordance with those procedures, the inmate should get a copy of the written charges against him ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident. *Id.* at (a). The inmate is entitled to be present at the initial hearing except when the inmate's presence would jeopardize the security of the institution and during deliberations of the

decision maker(s). *Id.* at (b) and (c). The inmate is entitled to make a statement and present

documentary evidence on his own behalf. *Id.* at (d). The inmate has the right to be notified in

writing of the UDC's decision and has the right to appeal the disciplinary sanctions through the

administrative remedy process. *Id.* at (f).

   Plaintiff contends that the Defendants violated his due process rights in this hearing

because he was not given the opportunity to rebut the evidence against him. Compl. ¶ 11(a). He

contends defendants McGowan and Lair, members of the UDC, found him guilty of the offense

without any evidence. Compl. ¶¶ 10 and 11-12. The record shows that during the UDC hearing,

Plaintiff admitted to having the outcount slips in his possession. *See* Exh. 20, Incident Report,

¶17. Plaintiff also indicated that the forms were thrown in the trash by staff. *Id.* ¶17. During

the hearing, inmate Jones requested no witnesses. Thus, the UDC found Plaintiff guilty of

possessing the unauthorized item based on the physical evidence and the inmate's own

admission. *Id.* at ¶ 19.

   Plaintiff also asserts Defendants did not allow him to rebut the evidence against him at

the UDC hearing. *Id.* at ¶¶ 10(a), 11(a). However, even if this were true, according to *Wolff*,

inmates' entitlement to present evidence at the hearing does not rise to the level of a

constitutional right, and it may be restricted as in cases where the inmates are not allowed to be

present at the hearings. The UDC reviewed the evidence, namely Plaintiff's own admission that

he took the papers from the staff trash can and the cop-out he submitted with the outcounts

attached, and imposed sanctions for Plaintiff's violation of Code 305. *See* Exh. 3, Inmate

Discipline Data. BOP policy outlines the possible sanctions for inmates who engage in

misconduct while in custody. *See* 28 C.F.R. § 541.10; Exh. 6, BOP P.S. 5270.07, *Inmate*

26

*Discipline and Special Housing Unit*.  A review of the table of sanctions reveals that the sanction imposed, loss of a job, was within the guidelines for a 305 disciplinary code violation and reasonable based on the circumstances.  28 C.F.R. § 541.13.

Plaintiff fails to show how his due process rights were violated during the disciplinary proceedings.  Losing a prison job is not the type of atypical and significant hardship the Supreme Court entitled to protection.  As the *Garza* court explained: "We do not construe [18 U.S.C. §] 4122(b)[6] as conferring a statutory right to prison industry employment . . . Section 4122(b) merely outlines factors in the exercise of that discretion . . . section 4122(b) does not mandate that every . . . inmate be given a job."  *Garza*, 688 F.2d at 485.  FPI or Unicor is a statutorily-created government corporation which provides work to inmates confined in federal institutions.  The BOP disciplinary code allows for the sanction of loss of a job for a 300 series (moderate category) disciplinary infraction.  *See* 28 C.F.R. § 541.13.   Plaintiff lost his employment at USP Pollock in UNICOR on February 15, 2005, as a result of a disciplinary infraction involving his job.  Plaintiff was reassigned to another job as "Education AM" on February 21, 2005, and he regained UNICOR employment on December 27, 2005.  *See* Exh. 16, Inmate Work History.  Clearly, Defendants' actions did not violate Plaintiff's due process rights.

> **3.    Plaintiff's Claim Fails Under The Equal Protection Clause of the Fifth Amendment**.

Equal protection requires "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  The government must "apply its laws in a rational and non arbitrary way; the unequal application of a law, fair on its

---

[6] 18 U.S.C. § 4122 concerns the Administration of Federal Prison Industries.

face, may act as a denial of equal protection." *Brandon v. District of Columbia Bd. of Parole*,

823 F.2d 644, 650 (D.C.Cir. 1987) (*citing Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886);

*Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir.1981)).  However, "the conscious exercise of

some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*,

368 U.S. 448, 456 (1962); *see also Brandon*, 823 F.2d at 650 ("[N]ot every divergence in the

application [of] a law gives rise to an equal protection claim.").  When a law is selectively

enforced, the plaintiff must claim that the selective enforcement was the result of a

constitutionally impermissible motive.  *James v. Reno*, 39 F.Supp.2d 37, 41 (D.D.C. 1999);

*Marshall v. Reno*, 915 F.Supp. 426, 434-33 (D.D.C. 1996);  *Pryor-El v. Kelly*, 892 F.Supp. 261,

270 (D.D.C. 1995).  Plaintiff must establish that, as a result of intentional or purposeful

discrimination, he was treated differently and unequally compared to other prisoners in his

circumstances.  *Brandon*, 823 F.2d at 650-651.

Plaintiff has failed to establish disparate treatment that would rise to the level of an equal

protection violation.  Plaintiff has not alleged that the disparate treatment was the result of a

suspect classification or that it was based on a constitutionally impermissible motive.  Instead, in

claiming that defendants did not sanction other inmates who had count slips in their possession,

plaintiff has "only baldly assert[ed] that he was treated differently than other prisoners in his

circumstances." *Marshall*, 915 F.Supp. at 432-33; *see also Pryor-El*, 892 F.Supp. at 269-70.

The BOP had a rational basis, the security of the institution, for imposing disciplinary sanctions

on Plaintiff, and firing him from his job for his possession of inmate count slips.  *See* Exh. 24,

Declaration of Linda Thomas.  Moreover, as set forth in the Lair and McGowan Declarations,

Plaintiff was the only inmate observed in the UDC for possession of outcount slips.  *See* Exh. 23,

¶ 4, Declaration of Defendant Derrick Lair, and Exh. 22, ¶ 4, Declaration of Defendant Robert

McGowan.  In accordance with policy, Plaintiff was disciplined.  *See* Exh. 24, ¶ 6, Declaration of

Defendant Linda Thomas.

      **C.**     **Defendant Lappin Did Not Violate Plaintiff's First Amendment Rights and Did Not Retaliate Against Plaintiff.**

      Plaintiff alleges that Lappin has retaliated against Plaintiff by ordering Defendant Roach

to wrongfully calculate Plaintiff's pay for piece work on overtime, an action that is inconsistent

with BOP policy.  Compl. ¶ 3(c).  Plaintiff also contends he was underpaid, and contends that

Defendants refused to allow him to work overtime after he filed administrative remedies.  In the

District of Columbia, a plaintiff asserting a claim for retaliation must allege: (1) that he was

engaged in an activity protected by the First Amendment, (2) that defendants impermissibly

infringed on his right to engage in that activity, and (3) that the alleged retaliation did not

advance legitimate goals of the prison.  *Pryor-El*, 892 F.Supp. at 274-75 (quoting *Rizzo v.

Dawson*, 778 F.2d 527, 530-31 (9th Cir. 1985)).  It is unconstitutional for prison officials to

punish an inmate for filing a grievance.  *See Byrd v. Moseley*, 942 F.Supp. 642, 644 (D.D.C.

1996).  An inmate's right to file institution grievances is protected by the First Amendment's

right to seek redress from the government and to access the courts.  *Toolasprashad v. Bureau of

Prisons*, 286 F.3d 576, 584 (D.C. Cir. 2002) *citing Turner v. Safley*, 482 U.S. 78, 84 (1987);

*Garcia v. District of Columbia*, 56 F.Supp. 2d 1, 7 (1998).  This right also extends to the

inmate's right to "the various preliminary filings necessary to exhaust administrative remedies

prior to seeking judicial review."  *Toolasprashad*, 286 F.3d at 584; *Garcia*, 56 F.Supp. 2d at 6

("Because the exhaustion of administrative remedies is a prerequisite to filing a Section 1983

action in court, . . . the filing of an inmate grievance is clearly protected by the First Amendment.").

Plaintiff's claim must fail because Defendant Lappin has no involvement in the calculation of Plaintiff's pay, or in determining Plaintiff's eligibility to work overtime. The record shows Plaintiff filed an administrative remedy request at the institution level on January 13, 2005, concerning the incorrect calculation of his pay. *See* Exh. 8, Administrative Remedy Request, Response and Appeal. Plaintiff alleges that in response to filing this administrative remedy, Defendant Lappin ordered Defendant Roach to incorrectly calculate Plaintiff's overtime pay and refused to allow Plaintiff to work overtime. Compl. ¶ 3(c). Director Lappin's duties do not involve determining inmates' pay rates or eligibility to work overtime. The warden is responsible for the local administration of Inmate Industrial Payroll regulations, and the Assistant Director, Industries, Education and Vocation Training, has the authority to grant prior approval for the initiation or change of the pay system. 28 C.F.R. § 345.10; *see also* Exh. 4, BOP Program Statement 8120.02, *Work Programs for Inmates - FPI (Federal Prison Industries)*. Thus, Plaintiff's *Bivens* claims against Defendant Lappin are without merit and should be dismissed.

Moreover, the BOP has the authority to hire, refuse to employ, fire, and rehire inmates, and inmates do not have the right to employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 49-51 (5th Cir. 1995); 18 C.F.R. §§ 345.34, 345.42; *see also* Exh. 4, BOP Program Statement 8120.02, *Work Programs for Inmates - FPI (Federal Prison Industries)*. Congress has authorized FPI to compensate inmates under rules and regulations promulgated by the Attorney General under 18 U.S.C. § 4126. Inmate pay rates, including piecework rates and overtime

compensation,[7] are  established in BOP policy.  *See* 28 C.F.R. § 345.50-67; *see also* Exh. 4, BOP

Program Statement 8120.02, *Work Programs for Inmates - FPI (Federal Prison Industries)*.

Overtime calculations are always processed through the Inmate Payroll System, a computerized

payroll program, which does the calculations automatically at the rates already established by

BOP policy.  *See* Exh. 5, BOP P.S. 8570.01, *Accounting Procedures for Inmate and Civilian*

*Payrolls - FPI*, ¶ 11 (June 25, 2001).  Individual employees cannot change the rates at which the

overtime pay is calculated.  Thus, Plaintiff's claim is clearly without merit.

Nevertheless, assuming *arguendo* Plaintiff's allegations regarding his UNICOR job and

overtime pay were true, such actions did not prevent or discourage him from filing administrative

remedies afterwards.  *Cf. Sprau v. Coughlin*, 997 F. Supp. 390, 393 (W.D.N.Y. 1998) (finding

that where alleged assault occurred minutes after the plaintiff informed the defendant he was

going to file a complaint, the court ruled that a reasonable jury could find that the defendant's

alleged treatment of plaintiff was intended to discourage plaintiff from seeking redress for his

grievances); *Mahotep v. DeLuca*, 3 F.Supp.2d 385, 389 (W.D.N.Y. 1998) (concluding that where

alleged assault occurred approximately one week after plaintiff filed three grievances, the court

found that a reasonable jury could conclude that the defendants' alleged conduct was intended to

discourage plaintiff from pursuing his grievances).  The BOP records reflect that Plaintiff

continued to file requests for administrative remedies during the remainder of the time he was

housed at USP Pollock.  *See* Exh. 2, Administrative Remedy Generalized Retrieval.  Plaintiff

---

[7]        The BOP already set the formula for calculating overtime pay consisting of a "rate of two times the hour or unit rate for hourly, individual, and group piecework rate workers, when the total hours worked exceed the FPI factory's regularly scheduled workday."  Exh. 4, BOP Program Statement 8120.02, *Work Programs for Inmates - FPI*.

also filed several administrative remedies requests and appeals concerning a wide range of issues after he was fired from his UNICOR position, including challenges to the disciplinary action taken against him, the calculation of his performance pay, and the allegedly illegal spending from the Inmate Trust Fund.  *See id.*   Thus, it is evident that Defendant Roach did not infringe on Plaintiff's right to seek redress from the government, and to access the courts under the First Amendment.  Because Plaintiff's claims are without merit, Plaintiff's claims should be dismissed.

### D.      The Increased BOP Telephone Rates Do Not Violate Plaintiff's Rights

Plaintiff alleges that Defendant Lappin violated his due process and equal protection rights by increasing the inmate telephone rates to 23 cents per minute. Compl. 3(b).  The Sixth Circuit has stated that an inmate's right to telephone use is restricted:

> an inmate 'has no right to unlimited telephone use.'  Instead, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'  'The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions.'

*Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)(citations omitted).  The BOP issued a Program Statement to explain to the inmate population the ITS Rates and how they are established.  The Program Statement stated

> [d]irect dial ITS telephone charges to inmates are to be established to encourage financial responsibility, family ties, and to ensure the Trust Fund Program remains financial solvent.  The Chief, Trust Fund Branch, with the Executive Staff's concurrence, is to establish telephone costs.

> The Chief, Trust Fund Branch is to review costs periodically.  The Executive Staff shall approve any significant modifications to direct dial rate (other than those required by routine cost variances).

*See* Exh. 12, BOP P.S. 4500.04, *Trust Fund/Warehouse Laundry Manual, Chapter 4554*. On

May 4, 2004, BOP also issued a memorandum explaining that this "[t]his modest increase [of 23

cents in direct dial long distance rates] is needed to ensure that adequate financial resources are

available for the inmate Trust Fund Program given rising program costs." *See* Exh.15,

Memorandum for All Trust Fund Supervisors.

As previous Courts have held, any challenges regarding the constitutional validity of the

BOP's mark up of commissary items must fail. *See Prows v. U.S. Dept. of Justice*, 1991 WL

111459 (D.D.C. 1991); *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir.1980); *Bagwell v.

Brewington-Carr*, 2000 WL 1239960, 2- 3 (D. Del. 2000) ("an inmate has no constitutionally

protected right to purchase food or other items as cheaply as possible through the prison

commissary" ).   In this case, the BOP exercised its discretion to raise the rates in response to

increasing costs and to ensure the existence of adequate resources in the inmate trust fund. There

is no constitutional or statutory violation.

>    **E.    The Claims Against Defendant Chief Trust Fund Officer Should Be
>           Dismissed**.

Plaintiff alleges that Defendant Chief Trust Fund Officer spent money from the Inmate

Trust Fund for non-inmate related items and on items which did not benefit the inmate

population as a whole.  Compl. ¶ 4.  Plaintiff claims that Defendant Chief Trust Fund Officer

spent money from the Inmate Trust Fund on: "Labor Law Attorneys, Security Background

Investigation, Air Lift Food and Medical, Executive Office Director, Health Service, non BOP

Medical, Prison Industries, Motor Pool, National Bus. Ops Food National Bus Ops-Custody

[sic], CMS Renovation, BOP Archives, Locksmith/Armory, Uniform Clothing, Facilities

Management, Power Plant, Staff House Maintenance, Narcotic Surveillance and more." Compl. ¶ 4(a).

### 1.    Plaintiff fails to Establish a Claim with Regards to the Chief Inmate Trust Fund Officer

Congress enacted 31 U.S.C. § 1321(b)(1), which mandated the creation of the inmate trust fund. The BOP may use Trust funds for "any purpose accruing to the benefit of the inmate body, as a whole, such as amusements, education, library, or general welfare work." *Maydak v. United States*, 363 F.3d 512, 521 (D.D.C. 2004) (citations omitted); *see also* Exh. 25, BOP Program Statement 4500.05, *Trust Fund/Deposit Fund Manual*, excerpt, Chapter 2 at 2 ("the management of inmate funds and the operation of the Trust Fund, as authorized, as designed primarily for the benefit of inmates.").

Plaintiff has not individually named this Defendant and has not served this Defendant. For these reasons, as discussed *supra,* the claim with respect to this unnamed Defendant should be dismissed. Assuming arguendo Plaintiff's claims that Defendant Chief Inmate Trust Officer spent money from the Inmate Trust Fund on items which did not benefit the inmate population (Compl. ¶ 4), these allegations alone do not rise to the level of a constitutional or even a statutory violation. Nor is it clear that Plaintiff has standing to pursue this claim because he has only expressed a generalized grievance. *See Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 218 (1974). Further, Plaintiff has not alleged a taking under the Fifth Amendment. Plaintiff alleges that Defendant Chief Inmate Trust Fund Officer "spent money on approximately 1020 items, which did not benefit the inmate population as a whole." BOP conducted an

34

investigation of the Plaintiff's allegations and ascertained that funds were being spent as required by BOP policy. *See* Exh. 7, Administrative Remedy Request, Response and Appeal.

**F.    Plaintiff has Failed to Support his Allegation that Defendant Flattery Was Deliberately Indifferent To His Medical Needs In Violation Of The Eighth Amendment**

Plaintiff complains that Defendant Flattery did not provide him with adequate medical care. Specifically, he alleges that Defendant Flattery only ordered x-rays and wrote Plaintiff a prescription for aspirin. Plaintiff alleges that X-rays indicate he has spurring on the left side of his body, and pain; Defendant Flattery did nothing about his pain, in violation of Plaintiff's Eighth Amendment rights, in that Defendant Flattery refused to give him proper medical care and showed indifference to his medical needs. Compl. ¶¶ 13(a), 42, 66. Further, Plaintiff alleges that on August 17, 2003, he met with Defendant Flattery who ordered x-rays of his back. Plaintiff further states that "on the 15th day of September 2005, Plaintiff went to medical and was given a copy of the radiologic report, on the 15th of September 2004 said report shows that Plaintiff have spuring [sic] on the left paraspinal area of his body" and "large spurring on the left saraspinal [sic] area at L1-L2." Compl. ¶¶ 13(a), 42. Plaintiff states that he "file[d] an administrative remedy requesting that Defendant Flattery . . . have the correct test performed to determine the cause of Plaintiff's pain" and that Defendant Flattery did nothing to correct his pain. *Id.*

In order to prevail on an Eighth Amendment claim, Plaintiff must prove that he has a serious medical need and that the defendant acted with deliberate indifference to his serious medical needs. *Arnold v. Moore*, 980 F.Supp. 28, 34 (D.D.C.1997) *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976); see also *O.K. v. Bush*, 344 F.Supp.2d 44, 61 (D.D.C. 2004) ("The Supreme Court has emphasized on several occasions that a claim of deficient medical care will not be

cognizable under the Constitution unless a prisoner can show a level of dereliction so grave that
it amounts to a 'deliberate indifference' to the prisoner's 'serious medical needs.'") (*citing Neitzke
v. Williams*, 490 U.S. 319, 321 (1989); *Estelle*, 429 U.S. at 104).  Deliberate indifference requires
the plaintiff to prove that a prison official: (1) was deliberately indifferent in his response to the
prisoner's needs; (2) intentionally denied or delayed access to medical care; or (3) intentionally
interfered with the treatment prescribed.  *Estelle*, 429 U.S. at 105.

A disagreement between an inmate and his doctor as to the appropriate choice of medical
treatment, however, does not give rise to a constitutional violation because the right under the
Eighth Amendment "to be free from cruel and unusual punishment does not include the right to
treatment of one's choice."  *Dias v. Vose*, 865 F.Supp. 53, 57 (D.Mass. 1994) (*quoting Layne v.
Vinzant*, 657 F. 2d 468, 473 (1st Cir. 1981)); *see also O.K.*, 344 F. Fupp. 2d at 61 ("a prisoner
has no discrete right to outside or independent medical treatment").  Furthermore, "[t]he fact that
a plaintiff feels that more should have been done for his condition is not sufficient basis for a
deliberate indifference claim." *Brown v. McElroy*, 160 F. Supp. 2d 699,706 (S.D.N.Y. 2001).

Records revealed that Plaintiff was evaluated for left back pain and received pain
medication.  Plaintiff's condition was being monitored through the Chronic Care Clinic.  When
Plaintiff complained of kidney problems, he was given an appointment which he failed to show
up for.  *See* Exh. 9, Administrative Remedy Response, dated March 26, 2004.  Subsequently,
laboratory tests and an x-ray of his kidneys, ureters and bladder were ordered.  *See* Exh. 10,
Regional Office Administrative Remedy Appeal Response, dated May 25, 2004.  The laboratory
tests and x-rays of his kidneys revealed no evidence of a problem.  *See* Exh. 11, Central Office

36

Administrative Remedy Appeal Response, dated July 28, 2004. Thus, Plaintiff was given appropriate treatment for his back pain.

Assuming *arguendo* that Defendant Flattery did not provide appropriate treatment to plaintiff, this would not be actionable in a *Bivens* suit because medical malpractice is insufficient to present a constitutional violation. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Redwood v. Council of the District of Columbia*, 679 F.2d 931, 933 (D.C. Cir. 1982); *Cason v. D.C. Dept. of Corrections*, 477 F.Supp.2d 141, 145 (D.D.C. 2007); *O.K.*, 344 F.Supp.2d at 61; *Cox v. District of Columbia*, 834 F.Supp. 439, 442 (D.D.C. 1992).

Plaintiff has failed to plead sufficient facts that would allow him to prevail on an Eighth Amendment claim. Plaintiff's allegations of mistreatment rest entirely on his own personal belief that he did not receive adequate medical treatment at USP Pollock. The allegations contained in this complaint are simply vague and conclusory. Plaintiff has no support to substantiate his claim that Defendant Flattery refused to treat his medical conditions or that Defendant Flattery did not order the proper medical tests to diagnose his pain. In fact, the records demonstrate the contrary. Because Plaintiff has failed to articulate a claim under the Eighth Amendment, the complaint should be dismissed as to Defendant Flattery.

**III.  Plaintiff Fails to Satisfy Any Element of the Test That Must Be Satisfied Before a Court May Issue Injunctive Relief.**

   **A.    The Standard of Review for a Preliminary Injunction.**

To the extent Plaintiff's suit may be read as a request for a preliminary injunction or a temporary restraining order, Plaintiff has failed to satisfy any element of the test that must be

satisfied before a court may issue injunctive relief.  The standards for injunctive relief, in the

form of either a preliminary injunction or a temporary restraining order, are well established:

> [T]he moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.  *e .g., Mova Pharm. Corp.*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)) (internal quotation marks omitted).  A district court must "balance the strengths of the requesting party's arguments in each of the four required areas."  *CityFed*, 58 F.3d at 747.  If the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak.  *Id.*

*See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see*

*also Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir. 1989); *Wisconsin Gas Co.*

*v. F.E.R.C.*, 758 F.2d 669, 673-74 (D.C. Cir. 1985); *Washington Metropolitan Area*

*Transportation Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843-44 (D.C. Cir. 1977);

*Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Thus, a preliminary injunction is "an extraordinary and drastic remedy, one that should

not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *See*

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Yakus v. United States*, 321 U.S. 414

(1944); *Emily's List v. Federal Election Comm'n*, 362 F.Supp.2d 43, 51 (D.D.C. 2005), 362

F.Supp.2d at 51; *National Head Start Ass'n v. Department of Health and Human Services*, 297

F.Supp.2d 242, 246 (D.D.C. 2004);  *Varicon Int'l v. Office of Personnel Management*, 934

F.Supp. 440 (D.D.C. 1996); *Kahane v. Secretary of State*, 700 F.Supp. 1162, 1165 (D.D.C.

1988).  Similarly, a "TRO is an extraordinary remedy and should not be granted lightly."  *See*

*Federation Internationale De Football Ass'n v. Nike, Inc.,* 285 F.Supp.2d 64, 68 (D.D.C. 2003);

*Experience Works, Inc. v. Chao,* 267 F.Supp.2d 93, 96 (D.D.C. 2003); *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1343 (D.C. Cir.1980).

The Court should balance the strengths of the requesting party's arguments in each of these required areas. *CityFed Fin. Corp.*, 58 F.3d at 747. It is particularly important, however, for the movant to demonstrate a substantial likelihood of success on the merits. *See Emily's List*, 362 F.Supp.2d at 51 (citing *Barton v. Dist. of Columbia*, 131 F.Supp.2d 236, 242 (D.D.C. 2001) and *Benton v. Kessler*, 505 U.S. 1084, 1085 (1992)). If the movant is unable to do so, the movant must then present a "very strong showing" with respect to the other preliminary injunction factors. *See Emily's List*, 362 F.Supp.2d at 51-52 (quoting *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 366 (D.C. Cir. 1999)) (emphasis added).

This Circuit has set a high standard for irreparable injury. First, the injury "'must be both certain and great; it must be actual and not theoretical.'" *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citing *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam)). The moving party must show "'[t]he injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" *Id*. Second, the injury must be beyond remediation. *See Chaplaincy*, 454 F.3d at 297. As the D.C. Circuit has explained:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*See Chaplaincy*, 454 F.3d at 297-98 (*quoting Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) and *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958)) (internal quotation marks omitted); *see also Sampson v. Murray*, 415 U.S. 61, 88-90 (1974).

An "injury held insufficient to justify a stay in one case may well be sufficient to justify it in another, where the applicant has demonstrated a higher probability of success on the merits." *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925. "An injunction may be justified for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747. An essential prerequisite to injunctive relief is a sufficient showing by the plaintiff that he will suffer irreparable harm if the injunctive relief is not granted. *See, e.g., Davenport*, 166 F.3d at 360.

Here, Plaintiff is essentially alleging that his rights were violated when he lost his job, his overtime pay was allegedly miscalculated, and he did not receive proper medical treatment. Plaintiff clearly does not have a right or entitlement to have a job, to have overtime pay, and to have the medical treatment of his choice. Plaintiff lost his job because he committed a disciplinary infraction which merited the loss of his job. Further, Plaintiff's overtime pay was calculated by the computerized payroll system in accordance with the rates already established by the BOP. Plaintiff also received medical treatment, although he disagrees with the treatment. However, a disagreement with medical treatment is not a ground for injunctive relief.

Moreover, Plaintiff will not sustain an irreparable injury if injunctive relief is denied in this case. He does not have a right to prison employment or overtime pay according to his own calculations, and he does not have a right to medical treatment of his choice. Plaintiff is not entitled to any remedy, as no right was violated by the actions of the BOP and its employees. To

40

grant injunctive relief in this case would seriously hinder the prison administrator's ability to manage discipline and health care, and this hindrance could seriously jeopardize the security of correctional institutions.

**B.    No Injunctive Relief May Be Awarded Without Meeting the Specific Preliminary Injunctive Relief Requirements of the PLRA AT 18 U.S.C. §3626(a)(2), Which Petitioner Cannot Do.**

The statute governing prospective relief in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C §3626(a)(2), puts substantial limits on preliminary injunctive relief. Specifically, the act provides, "prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in *Porter v. Nussle*, 534 U.S. 516, 525 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any preliminary injunctive relief unless narrowly drawn, extends no further than necessary to correct the harm the court finds requires preliminary relief, and is the least intrusive means necessary to correct that harm."   Further, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  The court must make <u>particularized findings</u> with respect to the requirements of the act, and must be more than mimicking the language of the statute, as discussed in *Cason v. Seckinger*, 231 F.3d 777 (11th Cir. 2000); *see also, Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002).

The legislative history regarding these restrictions was set out in *Thompson v. Gomez*, 993 F.Supp. 749, 754-5 (N.D.Cal.1997), *rev'd on other grounds* in *Gilmore v. People of the State of California*, 220 F.3d 987, 1005 (9th Cir. 2002):

The legislative reports on the bill reflect these Congressional intentions:

> 'By requiring courts to grant or approve relief constituting the least intrusive means by curing an actual violation of a federal right, the provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions. The provision limits remedies to those necessary to remedy the proven violation of federal rights. The dictates of the provision are not a departure from current jurisprudence concerning injunctive relief [which provides that] ... injunctive relief must be no broader than necessary to remedy the constitutional violation.' H.R.Rep. No. 21, 104th Cong., 1st Sess., pt. 2, p. 34 (1995) (citations and quotations omitted).'

*See also, Hadix v. Johnson*, 182 F.3d 400 (6th Cir. 1999) (Michigan prison system access-to-courts litigation); and *Armstrong v. Davis,* 275 F.3d 849 (9th Cir. 2001) (disabled inmates sought injunctive relief, using ADA/Rehabilitation Act as federal right).

There is no jurisdiction to proceed with this litigation, and defendant has shown that plaintiff's other arguments should be rejected, so there is no likelihood of success in this litigation. There is insufficient legal harm alleged as inmates do not have a right to jobs, overtime pay or medical treatment of their choice. Granting injunctive relief would have an adverse impact upon public safety and the operation of the federal criminal justice system.

## IV.    **PLAINTIFF IS NOT ENTITLED TO MONETARY DAMAGES**.

As discussed *supra*, at 6-7, the inherent sovereign immunity of the United States protects it and its agencies from suit absent express waiver. As Plaintiff's Complaint does not contain

even a colorable basis for such a waiver, and as Plaintiff has not sustained any constitutional

injury which would merit monetary damages, this suit must be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be

dismissed or, alternatively, that the Defendants' Motion for Summary Judgment be granted.  In

the event that the Complaint is not dismissed, Defendants respectfully request that this action be

transferred to the Middle District of Louisiana, where the claims arose and where the evidence

and witnesses are located.

Respectfully submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/ Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
555 Fourth St., N.W., Room E4821
Washington, D.C.  20530
Phone: (202) 307-0895; Fax (202) 514-8780
Sherease.Louis@usdoj.gov

Of Counsel:
Alma G. Lopez, Esq.
Federal Bureau of Prisons
Washington, D.C.

43

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AUTRY LEE JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Civil Action No. 06-0621 (RWR)** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| through the **DEPARTMENT OF JUSTICE,** | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I caused service of the foregoing Motion to Dismiss in Part or, in the

Alternative, For Partial Summary Judgment, to be made by depositing a copy of it in the U.S.

Mail, first class postage prepaid, addressed to:

Autry Lee Jones, #R52873-080
Otisville Federal Correctional Institution
P.O. Box 1000
Otisville, NY 10963

on this 31st day of August, 2007.

                                /s Sherease Louis
                                SHEREASE LOUIS