UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AUTRY LEE JONES,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, through the DEPARTMENT OF JUSTICE, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 06-0621 (RWR) |

**MOTION TO DISMISS THE AMENDED COMPLAINT,**
**OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR TO TRANSFER**

Plaintiff Autry Lee Jones, a pro se prisoner, brings this action against Defendants the United States of America ("United States"), Harvey Lappin, Michael Atwood, H. Chain, D. Roach, D. Dixon, D. Lair, R. McGowan, J. Flattery ("BOP Defendants"), and Condoleezza Rice alleging a host of claims largely brought under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics ("Bivens")*, 403 U.S. 388, 396-97 (1971). Defendants hereby moves pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1), (2), (3), (5), and (6) to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient service of process, and failure to state a claim upon which relief can be granted, respectively. In the alternative, Defendants respectfully request that the Court enter summary judgment in favor of the Defendants, pursuant to Rule 56, because there is no genuine issue of material fact which would prevent a judgment as a matter of law in Defendants' favor. In the second alternative, BOP Defendants request that claims against them be transferred to the Western District of Louisiana, where the events underlying such claims are alleged to have occurred.

In support of this Motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities. As also noted in such memorandum, Defendants incorporate by reference herein Defendants' Statement of Material Facts as to Which There Is No Genuine Dispute, submitted with BOP Defendants' Motion to Dismiss the original Complaint, filed August 31, 2007, Docket Entry No. 31-2; Statement of Material Facts Not In Genuine Dispute, submitted with State Defendants' Motion to Dismiss the original Complaint, filed on June 28, 2007, Docket Entry No. 21 ("State's Original Fact Statement"); and the exhibits to such statements, as Defendants' statement of material facts pursuant to Local Civil Rule 7(h). Because this is a dispositive motion, Defendant has not sought Plaintiff's consent. *See* L. Civ. R. 7(m).

Dated: May 16, 2008
Washington, DC

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AUTRY LEE JONES,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, through the DEPARTMENT OF JUSTICE, et al.<br><br>Defendants. | ) | Civil Case No. 06-0621 (RWR) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR TO TRANSFER**

Defendants the United States of America ("United States"), Condoleezza Rice, Harvey Lappin, Michael Atwood, H. Chain, D. Roach, D. Dixon, D. Lair, R. McGowan and J. Flattery, through their undersigned counsel, respectfully submit this memorandum of points and authorities in support of their Motion to Dismiss the Amended Complaint ("Motion") pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1), (2), (3), (5), and (6). In the alternative, summary judgment is appropriate on Plaintiff's claims under Rule 56. Lastly, in the second alternative, Plaintiff's claims against the BOP Defendants should be transferred to the Western District of Louisiana.

**PRELIMINARY STATEMENT**

Plaintiff Autry Lee Jones ("Plaintiff"), a prisoner now incarcerated in the Federal Correctional Institution in Otisville, New York ("FCI Otisville"), brings this action against the United States; Defendant Rice, Secretary, U.S. Department of State ("State"); and Defendants Lappin, Atwood, Chain, Roach, Dixon, Lair, McGowan and Flattery (collectively, "BOP Defendants;" BOP Defendants with Defendant Rice, the "Individual Defendants") alleging a host

of claims largely brought under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics ("Bivens")*, 403 U.S. 388, 396-97 (1971).[1]  In sum, Plaintiff (a) seeks to collaterally challenge his conviction by arguing that the one-year statute of limitation on habeas corpus actions is unconstitutional; (b) alleges that State violated the Freedom of Information Act in failing to respond to his alleged request for information; and (c) asserts that BOP Defendants violated his due process, equal protection and Eighth Amendment rights when (i) his overtime pay allegedly was incorrectly calculated; (ii) he was terminated from Unicor employment for the unauthorized possession of out-count slips; (iii) he was denied treatment for certain alleged medical conditions; and (iv) Defendants Lappin and Atwood allegedly spent money from the inmate trust fund on approximately one-thousand and twenty improper items.  For a number of reasons these claims are untenable as a matter of law.

*First*, to the extent Plaintiff's claims seek monetary relief against the United States and Individual Defendants in their official capacities, such claims are barred by the doctrine of sovereign immunity.

*Second*, the Court lacks personal jurisdiction over Defendants Chain, Roach, Dixon, Lair, McGowan and Flattery, as none of these individuals reside in the District of Columbia or took any actions directed to the District of Columbia upon which personal jurisdiction might be based.

*Third*, venue in this Court is improper for Plaintiff's claims against BOP Defendants.

*Fourth*, Plaintiff has failed to properly serve any of the Individual Defendants.

*Fifth*, Individual Defendants are entitled to qualified and/or absolute immunity for their actions.

---

[1]      Plaintiff previously dismissed all official capacity claims in his original Complaint.  *See* Pl's Motion to Dismiss, Docket Entry No. 9.  However, in his Amended Complaint, Plaintiff asserts claims against the Individual Defendants in both their individual and official capacities.  *See* Amd. Compl. at ¶¶ 16-20.  Accordingly, Individual Defendants will address Plaintiff's claims against them both in their official and individual capacities.

*Sixth*, Plaintiff's claims concerning the constitutionality of the one-year statute of limitations on habeas corpus challenges have been previously rejected on numerous occasions, including in cases brought by Plaintiff.

*Seventh*, Plaintiff's due process claims are insufficient as a matter of law because Plaintiff lacks a cognizable constitutional interest in prison employment, pay for prison employment, the inmate trust fund, and selection of medical care, and was afforded procedural due process at his UDC hearing.

*Eighth*, Plaintiff's equal protection claims are insufficient because Plaintiff has failed to identify any classification to which he was subjected.

*Ninth*, Plaintiff's FOIA-based claim should fail as a matter of law because Plaintiff failed to exhaust administrative remedies under FOIA.

*Tenth*, Plaintiff lacks standing to bring his claims involving the Inmate Trust Fund.

*Eleventh*, in the alternative, there exists no genuine issue of material fact that Plaintiff's claims are insufficient as a matter of law.

*Lastly*, in the alternative, Plaintiff's claims against the BOP Defendants should be transferred to the Western District of Louisiana as a more convenient forum.

## SUMMARY OF THE ALLEGATIONS

On April 3, 2006, Plaintiff filed this action. Plaintiff amended his Complaint on February 29, 2008. *See* Docket Entry No. 43. In sum, Plaintiff asserts three groups of claims in his Amended Complaint. *First*, Plaintiff attempts to collaterally challenge his conviction by asserting claims against the United States alleging that the one-year statute of limitations for filing federal habeas corpus petitions violates the First and Fifth Amendments of the United States Constitution. *See* Amd. Compl. at ¶¶ 32-35 (first and second claims for relief).

*Second*, Plaintiff asserts a claim against Defendant Rice for violation of the Freedom of Information Act and/or the Due Process Clause for failing to respond to a supposed FOIA request allegedly made by Plaintiff in October 2004. *See id.* at ¶¶ 2, 36-37 (third claim of relief).

*Lastly*, Plaintiff asserts a host of claims against various BOP Defendants alleging that from December 16, 1997, through February 15, 2005 -- while he was confined at the United States Penitentiary in Pollock, Louisiana ("USP Pollock")[2] -- (i) Defendants Lappin, McGowan, Lair, Dixon and Chain denied him equal protection and due process in a disciplinary infraction regarding inmate count slips, which resulted in his termination from Unicor (*see* Amd. Compl. at ¶¶ 3(d)-(f), 5(f), 7-9, 39-40, 47-50, 53-54 (fourth, eighth, ninth, and eleventh claims for relief)); (ii) Defendants Chain, Lappin and Roach retaliated against him for filing administrative remedies by underpaying him and not permitting him to work overtime thereby depriving him of equal protection and due process (*see id.* at ¶¶ 3(c), 5(a)-(e), 6, 43-46, 51-52 (sixth, seventh and tenth claims for relief)); (iii) Defendants Lappin and Atwood spent funds from the Inmate Trust Fund on items that do not benefit the inmate population as a whole, resulting in an increase in the inmate telephone rate to 23 cents per minute (*see id.* at ¶¶ 3(a)-(b), 4, 41-42 (fifth claim for relief)); and (iv) Defendant Flattery violated his right to receive adequate medical care. *See id.* at ¶¶ 10, 55-56.

Based upon the aforementioned claims Plaintiff seeks as remedies: (a) revocation of his termination from Unicor; (b) back pay; (c) an order commanding Defendants Lappin and Atwood "to replace all money which they spent from the Inmate Trust Fund which did not benefit the inmate population as a whole," and reduce the prisoner phone rate from $0.23 per minute to $0.07; (d) expungment of the incident report regarding his unauthorized possession of

---

[2] A federal prison located in the Western District of Louisiana.

out-count slips; (e) an order commanding each defendant to perform nine hours of community service; (f) release of records by Defendant Rice on how the government has determined to stop discrimination in the U.S. justice system; and (g) $9,999.99 in damages from each of Defendants Chain, Roach, Dixon, McGowan, and Lair.

## BACKGROUND AND STATEMENT OF FACTS[3]

Defendants hereby incorporate by reference Defendants' Statement of Material Facts as to Which There Is No Genuine Dispute, submitted with BOP's Original MTD (defined below) filed August 31, 2007, Docket Entry No. 31-2 ("BOP's Original Fact Statement"), Statement of Material Facts Not In Genuine Dispute, submitted with State's Original MTD (defined below), filed on June 28, 2007, Docket Entry No. 21 ("State's Original Fact Statement"), and Plaintiff's responses thereto.[4] Defendants, however, also make specific reference to the following information for the Court's convenience.

### I. PROCEDURAL HISTORY

#### A. Plaintiff Is Convicted, Sentenced, And Incarcerated.

Plaintiff Autry Lee Jones, Reg. No. 52873-080, was convicted in 1991 of Possession of Cocaine Base and Conspiracy to Possess Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Public Information Inmate Data, attached to Motion to Dismiss In Part or, in the Alternative, for Partial Summary Judgment With Respect to the Federal Bureau of Prisons and Individual Defendants, Docket Entry No. 31 ("BOP's Original MTD"), at Ex. 1. On October 21,

---

[3] Plaintiff should take notice that any factual assertions contained in the documents incorporated by reference or attached to this Motion may be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in such documents. *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992); LCvR 7(h); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.").

[4] Defendants further incorporate by reference BOP's Original Fact Statement and State's Original Fact Statement as their Statement of Material Facts for purposes of this Motion pursuant to Local Civil Rule 7(h).

1991, the United States District Court for the Western District of Texas sentenced Plaintiff to a life sentence, which he began to serve on November 8, 1991. *See id.* On December 4, 1992, the United States Fifth Circuit Court of Appeals affirmed Plaintiff's conviction and sentences. *See United States v. Jones*, 980 F.2d 1444 (5th Cir.1992), *cert denied*, 507 U.S. 1040 (1993).

On April 29, 2003, Plaintiff arrived at USP Pollock, where he was designated to serve out his sentence. *See id.*

**B. <u>Thereafter, Plaintiff Attempted To Challenge His Conviction.</u>**

In 1997, Plaintiff filed a motion to vacate his conviction, which was denied. *See United States v. Jones,* No. 1:90-CR-00177 (W.D. Tex.), Docket Entry Nos. 93-94; *see also Jones v. United States*, 1:97-CV-00579 (W.D. Tex.). On May 5, 1998, in an unpublished opinion, the United States Court of Appeals for the Fifth Circuit affirmed the judgment of the district court denying Plaintiff's motion to vacate. *See United States v. Jones*, No. 97-50132 (5th Cir. Apr. 14, 1998).

Thereafter, Plaintiff filed numerous actions attempting to challenge his conviction. *See* Mot. To Reconsider. IFP, Docket Entry No. 41. Notably, in these numerous attempts, at least on one prior occasion, Plaintiff raised the arguments that the one-year statute of limitations on habeas corpus petitions was unconstitutional under the First Amendment and because of his actual innocence (*i.e.*, the same claims he brings in this action). *See Jones v. Tapia*, 86 Fed. Appx. 781 (5th Cir. 2004), *cert denied* 542 U.S. 926 (2004).

## II. PLAINTIFF'S UNAUTHORIZED POSSESSION OF OUT-COUNT SLIPS.

**A. <u>While Incarcerated Plaintiff Began To Work For Unicor.</u>**

On May 19, 2003, while Plaintiff was incarcerated at USP Pollock, Plaintiff began to work for UNICOR ("Unicor"). *See* Inmate History: Work Detail, BOP Orig. MTD at Ex. 16. Federal Prison Industries, Inc. (d/b/a Unicor) is a statutorily-created government corporation

which provides inmates confined in federal institutions the opportunity to work.  *See* 18 U.S.C. § 4121, *et seq.*

**B.    Plaintiff Obtained Unauthorized Out-Count Slips From The Unicor Trashcan.**

On February 13, 2005, Plaintiff was found by Defendant Dixon to be in possession of six pages of official out-count forms or slips, which Plaintiff indicated he retrieved from one of the Unicor trashcans.  *See* Incident Report at 1-2, BOP Orig. MTD at Ex. 20.  Indeed, Plaintiff does not dispute that he possessed the out-count slips.  *See* Pl's Resp. to BOP Orig. Fact Stmt. at ¶ 9, BOP Orig. Fact Stmt. at ¶ 9.

Count slips are official forms generated by the Bureau of Prisons ("BOP") computerized system and are used by prison staff to document the number of inmates located in specific areas of the prison during official counts.  *See* Thomas Decl. at ¶ 4, BOP Orig. MTD at Ex. 24.  Out-count slips are versions of count slips that are used by prison staff to document the number of inmates located in areas outside of the prison's housing units.  *See id.*

BOP policy prohibits prisoners from either preparing or possessing count slips, including out-count slips.  *See id.* at ¶ 5.  That is, BOP policy specifically identifies the universe of items a prisoner may possess during his or her incarceration by setting forth an exhaustive list of such items, which is available to prisoners in the prison library.  *See* Prog. Stmt. 5580.06, BOP Orig. MTD at Ex. 17.  BOP's proscription against prisoners possessing count slips is rationally based upon fears that "[i]nmates could easily alter the forms or fill out blank forms incorrectly to, among others, conceal an escape attempt, create a distraction for correctional staff in order to engage in illegal acts or actions that compromise security, and delay the completion of the official counts, thereby interfering with the orderly running of the institution."  *See* Thomas Decl. at ¶ 5, BOP Orig. MTD at Ex. 24.

**C. After Being Notified of the Charges, Plaintiff Was Provided an Opportunity to be Heard, and Was Found To Have Violated Prison Policy By Possessing Out-Count Slips.**

After being found with the out-count slips, on February 13, 2005, Plaintiff received an incident report informing him that he was being charged with violating Code 305 of 28 C.F.R. § 541.13, "possession of anything not authorized for retention or receipt by the inmate and not issued to him through regular channels." 28 C.F.R. § 541.13 at Table 3, Code 305; *see also* Incident Report at 1, BOP Orig. MTD at Ex. 20.

Two days later, on February 15, 2005, Defendants McGowan and Lair conducted a United Disciplinary Committee ("UDC") Hearing of Plaintiff on such charge. *See* Incident Report at 1, BOP Orig. MTD at Ex. 20. Plaintiff provided a statement for consideration at such Hearing, admitting that he possessed such slips. *See id*. After deliberating and considering the evidence before them, Defendants McGowan and Lair found that Plaintiff committed the prohibited act charged, and sanctioned Plaintiff to loss of his Unicor job.[5] *See id.* Plaintiff was provided a copy of the Incident Report, which contained the panel's decision. *Id.*

Plaintiff subsequently pursued certain administrative grievances concerning the findings of the UDC Hearing. *See* Admin. Remedy Gen. Retrieval, BOP Orig. MTD at 2. Notably, Defendants Lair and McGowan, the individuals on the UDC hearing panel for Plaintiff's out-count slip charge, cannot recall any UDC cases in which a prisoner was charged with the unauthorized possession of out-count slips. *See* McGowan Decl. at ¶ 4, BOP Orig. MTD at Ex. 22; Lair Decl. at ¶ 4, BOP Orig. MTD at Ex. 23; *see also* Thomas Decl. at ¶ 6, BOP Orig. MTD at Ex. 24.

[5] Loss of job is a possible sanction for a violation of Code 305 under 28 C.F.R. § 541.13. 28 C.F.R. § 541.13 at Table 3.

### D. After Losing His Unicor Job, Plaintiff Was Subsequently Reemployed by Unicor.

After losing his Unicor job, Plaintiff was assigned to a USP education program for a period of approximately one-month. *See* Inmate History: Work Detail, BOP Orig. MTD at Ex. 16. Later in 2005, Plaintiff returned to Unicor service on December 17, 2005. *See id.*

## IV. PLAINTIFF'S OVERTIME PAY FOR HIS UNICOR JOB.

In late-2004 and early-2005, around the time that Plaintiff was found to be possessing unauthorized out-count slips, Plaintiff began to complain about the method by which his overtime pay for his Unicor job was calculated. *See* Records re: Admin. Remedy No. 364205, BOP Orig. MTD at Ex. 8.

Prior to Plaintiff's termination from Unicor on February 15, 2005, Plaintiff was a "piece worker," who was paid regular wages based upon the number of items he finished during his regular scheduled workday -- *i.e.*, Plaintiff's regular wages were calculated by multiplying the number of items he completed by a set pay rate per item. *See* Amd. Comp. at ¶ 6. BOP Program Statement 8570.1, promulgated on June 25, 2001, sets forth the accounting procedures for Unicor pay, including piece worker overtime pay. *See* Prog. Stmt. 8570.01, BOP Orig. MTD at Ex. 5. Paragraph 17.b, on pages 12 and 13 of such program statement, specifically provides the method by which overtime earnings are determined for piece workers. *See id.* at 12-13. This calculation method, which utilizes both hours worked and units produced, is consistent with the method that Plaintiff alleges was improperly utilized to calculate his overtime pay. *Compare id.* at 12-13 *with* Amd. Compl. at ¶ 6(a).

## V. THE INMATE TRUST FUND AND EXPENDITURES THEREFROM.

The Prison Commissary Fund ("Inmate Trust Fund"), is "a separate account in the United States Treasury, [ ] comprised of money spent by inmates nationwide in the commissaries of

federal correctional institutions. Pursuant to the provisions of a Department of Justice circular governing the control of prisoner funds at federal correctional institutions, however, any profits realized from the sale of commissary items are to be placed in a special 'welfare fund' and are to be held in trust for disbursement with the approval of the Director of the Bureau of Prisons 'for any purpose accruing to the benefit of the inmate body, as a whole, such as amusements, education, library, or general welfare work.'" *Washington v. Reno*, 35 F.3d 1093, 1096 (6th Cir. 1994).

Plaintiff also alleges -- based upon a Cost Center File that appears to list all BOP accounting cost centers -- that Defendants Lappin and Chain misappropriated Trust funds for impermissible uses, which raised the inmate telephone rate. For a number of reasons detailed below, Plaintiff's unsupported, conclusory allegations that Trust funds were somehow impermissibly spent on improper items, is untenable

**VI. PLAINTIFF'S MEDICAL CARE IN PRISON.**

Plaintiff also raises a claim concerning his medical care. On September 19, 2003, Plaintiff complained of left side and back pain and, in response, was prescribed and received appropriate medicine. *See* Records re: Admin Remedy No. 326909 at 1, BOP Orig. MTD at Ex. 10. Thereafter, when Plaintiff complained of kidney problems, he was given an appointment, for which he failed to show up. *See id.* Subsequently, on April 19, 2004, Plaintiff was evaluated by the prison's staff physician due to Plaintiff's complaints of "flank pain." *See id.* at 3. In response, laboratory tests and an x-ray of Plaintiff's kidneys, ureters and bladder were ordered. *See id.* The laboratory tests and x-rays of Plaintiff's kidneys revealed no evidence of a problem. *Id.* Thereafter, on April 23, 2004, when Plaintiff was seen again at a clinic appointment, Plaintiff

did not report any "flank pain." *Id.* Plaintiff has failed to articulate how this care was somehow insufficient.

**VII. PLAINTIFF'S ALLEGED FOIA REQUEST.**

Plaintiff also alleges that Defendant Rice failed to respond to a FOIA request that he submitted in October 2004. In support of his claim, Plaintiff attached a United States Postal Service Return Receipt ("Return Receipt") as Exhibit 1 to his original complaint. *See* Compl. at Ex. 1. The Return Receipt was postmarked October 26, 2004, and indicates that Plaintiff mailed an envelope addressed to Colin L. Powell at 2201 C. Street NW, Washington, DC 20001. *See id.* Plaintiff claims that this Return Receipt corresponds to a letter sent to former-Secretary of State Powell asking "to learn what if anything has been implemented to correct the discrimination in the United States Justice system, which was documented by the Department of State for the United Nation." Amd. Compl. at ¶ 2. Plaintiff, however, has not attached a copy of his purported request.

State Department records indicate that the State Department never received a FOIA request from Plaintiff. *See* Grafeld Decl. at ¶ 8, Motion to Dismiss in Part or, in the Aternative, for Partial Summary Judgment with Respect to Defendants the United States Department of State and Secretary of State Condoleezza Rice ("State Orig. MTD") at Ex. 1. As of October 26, 2004, the State Department's regulations required that FOIA requests be mailed to "Information and Privacy Coordinator, Foreign Affairs Information Management Center, Room 1239, Department of State, Washington, DC 20520." *See* 22 C.F.R. § 171.2(b) (April 1, 2004 edition). As of November 3, 2004, the State Department's regulations were changed to state that FOIA requests should be mailed to "Information and Privacy Coordinator, U.S. Department of State, SA-2, 515 22nd Street, N.W., Washington, DC 20522-6001." See 22 C.F.R. § 171.5(a) (April 1, 2005

edition). As noted above, even if the Return Receipt corresponds to Plaintiff's request, such request was addressed to neither of these addresses. Indeed, despite the State Department's good faith efforts, it is unlikely that a request addressed to the Secretary of State posed in the form of a question would have been forward to the State Department office responsible for FOIA requests. *See* Grafeld Decl. at ¶¶ 5-6, State Orig. MTD at Ex. 1.

**ARGUMENT**

**I. RELEVANT LEGAL STANDARDS.**

**A. Lack of Subject Matter Jurisdiction.**

"The court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority[.]" *Judicial Watch, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 2d 84, 86 (D.D.C. 2007) (Lamberth, J.). "To prevail on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it is the plaintiff's burden to establish that the court has subject matter jurisdiction to hear the case." *Zivotofsky v. Sec'y of State*, 511 F. Supp. 2d 97, 101 (D.D.C. 2007) (Kessler, J.). That is, "Federal courts are courts of limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction." *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 18 (D.D.C. 2007) (Urbina, J.) (internal quotations omitted). Moreover, "[i]n making its determination regarding the existence of subject matter jurisdiction, the court may consider matters outside the pleadings." *Evans-Hoke v. Paulson*, 503 F. Supp. 2d 83, 85 (D.D.C. 2007) (Kessler, J.) (holding, *inter alia*, that the Court lacked subject matter jurisdiction to hear taxpayer's claim for damages, as taxpayer failed to exhaust her administrative remedy). For the reasons stated below, when this standard is applied to Plaintiff's claims, such claims should be dismissed against the United States and the Individual Defendants in their official capacities due to the doctrine of sovereign immunity to the extent such claims seek money damages.

Furthermore, Plaintiff's claim regarding the Inmate Trust Fund should be dismissed under this standard because Plaintiff lacks standing.

**B. Lack of Personal Jurisdiction.**

As this Court has recognized:

> A plaintiff bears the burden of alleging facts sufficient to make a prima facie showing establishing personal jurisdiction. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). A court determines whether it may constitutionally exercise personal jurisdiction over a nonresident defendant by determining whether the defendant is subject to jurisdiction under the applicable long-arm statute, and if so, whether exercising jurisdiction is consistent with the constitutional requirements of due process. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).
>
> This Court has jurisdiction under the District of Columbia long-arm statute over individuals or their agents for claims arising from business transactions, contracts to provide services, or tortious injuries that occurred in the District of Columbia. D.C. Code § 13-423(a)(1)-(4). "Plaintiff [ ] must satisfy [the statutory] requirements and also establish minimum contacts within confines of due process before the Court can exercise personal jurisdiction[.]" *Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D.D.C. 1998). The Court's exercise of personal jurisdiction cannot offend "traditional notions of fair play and substantial justice." *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 48 (D.D.C. 1994) (*quoting Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992)).

*Thornberry v. Fed. Bureau of Prisons*, 535 F. Supp. 2d 154, 156-57 (D.D.C. 2008) (Roberts, J.) (dismissing claims against BOP defendants who did not reside in D.C.). Based upon this precedent and as further described below, the Court should dismiss all claims against Defendants Chain, Roach, Dixon, Lair, McGowan and Flattery.

**C. Improper Venue.**

As Judge Bates recently noted:

> Fed. R. Civ. P. 12(b)(3) instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen

> forum. "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002) (*citing 2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D .D.C. 2001)).
>
> If the district in which the action is brought does not meet the requirements of [the statutory] venue provision, then that district court may either dismiss, "or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision whether dismissal or transfer is "in the interests of justice" is committed to the sound discretion of the district court. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).

*Pendleton v. Mukasey*, --- F. Supp. 2d ---, 2008 WL 2036702, at *2 (D.D.C. May 13, 2008) (Bates, J.). As described below, based upon the applicable statutory venue provision, venue in this District is improper.

**D. <u>Insufficient Service of Process.</u>**

As Judge Collyer recently noted:

> Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of proper service of summons must be satisfied to assure notice to the defendant. Under Federal Rule of Civil Procedure 12(b)(5), if the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint. . . . Upon such a motion, the plaintiff carries the burden of establishing that he has properly affected service. Failure of service is a jurisdictional defect which is fatal. Accordingly, courts routinely dismiss actions when service is improper.

*Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Solutions, Inc.*, --- F. Supp. 2d ---, 2008 WL 1953524, at *3 (D.D.C. May 6, 2008) (Collyer, J.) (internal citations and quotations omitted); *see also Light v. Wolf*, 816 F.2d 746, 750 (D.C. Cir. 1987). Because Plaintiff has failed

to properly serve any of the Individual Defendants, claims against such defendants should be dismissed.

**E. <u>Failure to State A Claim Upon Which Relief Can Be Granted.</u>**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007), *citing Twombly*. Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support Plaintiff's claim for relief. *Id.* Indeed, "'[w]ithout some factual allegation in the complaint, it is hard to see how a [plaintiff] could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.'" *Chung v. Chao*, 518 F. Supp. 2d 270, 273, n.3 (D.D.C. 2007) (Kessler, J.), *quoting Twombly*.

The Court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004), *citing Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Linares v. Jones*, 04-0247(GK), 2007 WL 1601725, at *6 (D.D.C. June 4, 2007), *citing Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id.* For the reasons stated

below, even if this Court has jurisdiction, Plaintiff has failed to plead a claim upon which relief can be granted.

**F. Summary Judgment.**

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kilby-Robb v. Spellings*, 522 F. Supp. 2d. 148, 154 (D.D.C. 2007) (Bates, J.), *quoting* Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material facts. *Id.* In deciding whether a genuine issue of material facts exists, the court must "accept all evidence and make all inferences in the non-movant's favor." *Id.*, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A non-moving party, however, must establish more than the mere existence of a scintilla of evidence in support of its position." *Id.* (citations and internal quotation marks omitted). That is, "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.*, *quoting Anderson*, 477 U.S. at 249-50. Applying this standard to the Complaint, Plaintiff's claims should be dismissed for the reasons set forth below.

**II. GENERAL ARGUMENTS FOR DISMISSAL.**

**A. The Doctrine of Sovereign Immunity Bars Plaintiff's Claims.**

It is fundamental, under the doctrine of sovereign immunity, that the United States cannot be sued without its consent. *United States v. Testan*, 424 U.S. 392 (1976) ("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction . . . to entertain suits against the United States'") *quoting United States v. Sherwood*, 312 U.S. 584 (1941) (the United States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit").

Any governmental waiver of sovereign immunity must be unequivocal, and strictly construed. *See, e.g.*, *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Williams*, 514 U.S. 527, 531 (1995). Where the federal government waives its immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981). Such waivers are construed strictly in favor of the sovereign. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986).

Based upon this well established rule, to the extent Plaintiff asserts claims against the United States or the Individual Defendants in their official capacities for monetary damages, such claims must be dismissed. Indeed, "[s]overeign immunity does [ ] bar suits for money damages against the government itself, and against public officials sued in their official capacities." *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 115 (D.D.C. Feb. 5, 2008) (Friedman, J.), *citing Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984). Accordingly, the court lacks subject matter jurisdiction over Plaintiff's claims to the extent they seek monetary relief from the United States or the Individual Defendants in their official capacities.

**B. <u>The Court Lacks Personal Jurisdiction Over Certain BOP Defendants.</u>**

This Court lacks personal jurisdiction over Defendants Chain, Roach, Dixon, Lair, McGowan and Flattery, as none of these individuals reside in the District of Columbia or took any actions directed to the District of Columbia upon which personal jurisdiction might be based.

As noted above, in determining whether it has personal jurisdiction over a non-resident defendant, a court must first consider whether such defendant is subject to the local jurisdiction's

long arm statute. *See supra* at 13-14. The District of Columbia's long arm statute is found at D.C. Code § 13-423, which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>
> (5) having an interest in, using, or possessing real property in the District of Columbia;
>
> (6) contracting to insure or act as surety . . .; or
>
> (7) marital or parent and child relationship . . .

*Id.* Plaintiff concedes in his Amended Complaint that Defendants Roach, Dixon, Lair, McGowan and Flattery work and reside in Louisiana, and that Defendant Chain works and resides in Virginia. *See* Amd. Compl. at 1. Furthermore, Plaintiff alleges that such defendants took wrongful actions against him while confined at USP Pollock, located in Louisiana. *See* Amd. Compl. Indeed, "[t]he mere fact that these defendants are employees of BOP, the headquarters office of which is in the District of Columbia, does not render them subject to suit in their individual capacities in the District of Columbia." *Thornberry*, 535 F. Supp. 2d. at 157, *citing Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980). Accordingly, Plaintiff's individual capacity claims against Defendants Chain, Roach, Dixon, Lair, McGowan, and Flattery should be dismissed pursuant to Rule 12(b)(2).

**C. Venue Is Improper For Plaintiff's Claims Against BOP Defendants.**

Plaintiff's claims against the BOP Defendants should also be dismissed because venue is improper over such claims. The applicable venue statute states in relevant part: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b); *see also Thornberry*, 535 F. Supp. 2d at 157.

Subsection one of this provision does not apply because not all of the BOP Defendants reside in the same state -- *i.e.*, Defendants Roach, Dixon, Lair, McGowan and Flattery reside in Louisiana, Defendant Chain in Virginia, and Defendants Lappin and Atwood allegedly in D.C. *See* Amd. Compl. at 1. Subsection three would provide a basis for venue in this District only if no other district is available to bring the action. *See Thornberry*, 535 F. Supp. 2d at 157. Under subsection two, though, venue would lie in the Western District of Louisiana (*i.e.*, USP Pollock's location), where a substantial part of the unlawful actions are alleged to have occurred. Accordingly, venue is improper for Plaintiff's claims against the BOP Defendants.

**D. Plaintiff Has Failed to Properly Serve Any of the Individual Defendants.**

Plaintiff has failed to serve properly any of the Individual Defendants. Officers or employees of the United States sued in their individual capacities, or sued in both their individual and official capacities, must be served under Rule 4(e) if located within a judicial district of the United States. Rule 4(i)(2), 4(e); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (defendants in *Bivens* action must be served as individuals, pursuant to Fed. R. Civ. P. 4(e)).

Rule 4(e) provides that a Plaintiff can affect service by: (i) following state law for serving a summons; (ii) personally serving the individual; (iii) leaving a copy at the individual's dwelling; or (iv) delivering a copy to a person designated as the individual's agent for service of process. *See id.* A plaintiff may request that a United States marshal effect service, but because Plaintiff is no longer proceeding *in forma pauperis*, he would have to pay for the marshal's service. *See* Rule 4(c)(3); 28 U.S.C. § 1921(a)(1)(A) (the United States marshals shall collect fees for service of a complaint and/or summons, among others); 28 C.F.R. § 0.114 (current fees for U.S. marshal services). Further, the law is clear that service upon an individual is not effected by leaving a copy of the complaint at his or her place of business with a person who has not been specifically appointed as the individual's personal agent for service of process. *See Leichtman v. Koons*, 527 A.2d 745, 747, n.5 (D.C. 1987) (office employee with authority to receive business mail does not, by virtue of that position, have authority to receive process, and actual knowledge of the existence of a lawsuit is no substitute for personal service).

As noted on the Court's electronic docket, Plaintiff has not properly served any of the Individual Defendants. Accordingly, all claims against the Individual Defendants should be dismissed.

**E. The Individual Defendants Enjoy Qualified Immunity, And Thus, Plaintiff's *Bivens* Claims Should Be Dismissed.**

The Individual Defendants are entitled to qualified immunity from Plaintiff's individual capacity claims. "Qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Koutny v. Martin*, 530 F. Supp. 2d 84, 89 (D.D.C. 2007) (Roberts, J.), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A court engaging in a qualified immunity analysis must 'first determine whether the plaintiff has

alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *1613 Harvard Ltd. P'ship v. District of Columbia*, Civ. A. No. 05-0726, 2007 WL 2071665, at *4 (D.D.C. July 19, 2007), *quoting Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "However, the relevant constitutional right must be defined with some specificity . . . [That is], courts must define the right to a degree that would allow officials reasonably to anticipate when their conduct may give rise to liability to damages." *Id.* (internal citations and quotations omitted). Indeed, "[f]or a public official to be liable for damages, that official must have violated a constitutional right, and that right must have been 'clearly established' - 'the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Further, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Lastly, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *1613 Harvard*, 2007 WL 2071665, at *4, *quoting Crawford-El v. Britton*, 523 U.S. 574, 588 (1988).

Plaintiff fails to plead any violation of any established constitutional right, let alone one that is sufficiently clear that a reasonable official would understand his actions to be violating such a right. As noted below, inmates do not have a cognizable constitutional right to prison employment. *See infra* at 23-25. Further, inmates do not have a constitutional right to even receive compensation for their prison work. *Id.* Additionally, inmates do not have a

constitutionally protected interest in the Inmate Trust Fund. *Id.* Lastly, inmates do not have a constitutionally protected right to medical treatment of their choice.[6]

Accordingly, the Individual Defendants are entitled to qualified immunity and Plaintiff's *Bivens* claims against them should be dismissed.

**III. DISMISSAL ARGUMENTS AS TO SPECIFIC CLAIMS.**

**A. Plaintiff's Claims Alleging that The One-Year Statute of Limitations on Federal Habeas Corpus Petitions Is Unconstitutional, Should be Dismissed.**

Plaintiff alleges that the one-year statute of limitations on federal habeas corpus petitions is unconstitutional under the First Amendment and because of Plaintiff's purported actual innocence. As described below, this claim is legally insufficient.

*First*, in at least one prior action, Plaintiff has brought the same habeas claim that he brings in this action. Plaintiff's prior claim was rejected. *See Jones v. Tapia*, 86 Fed. Appx. 781 (5th Cir. 2004) (in a habeas petition "Jones argues that (1) he has been denied his First Amendment right to petition the courts; . . . and (3) he is actually innocent."). Accordingly, his present habeas claims based upon the same arguments are barred by res judicata and/or collateral estoppel. *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C.Cir. 1983)("The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues.").

*Second*, Plaintiff's claims that the one year statute of limitations governing the filing of federal habeas corpus petitions is unconstitutional, because it deprives him of his ability to petition the courts to prove his innocence, has repeatedly been rejected by courts has having no merit. *See, e.g., David v. Hall*, 318 F.3d 343, 347 (1st Cir. 2003) (where petitioner had ample

[6] Furthermore, even if Plaintiff's FOIA claim were not otherwise untenable, and Plaintiff was ultimately able to show that the State Department violated FOIA in failing to respond to his request, such a violation does not turn a FOIA claim into a Constitutional violation. *See infra* at n.8.

time to file his habeas corpus petition arguing innocence "within the statutory deadline . . . the [statute of] limitation is not even arguably unconstitutional."); *Lucidore v. N.Y. State Div, of Parole*, 209 F.3d 107, 113 (2nd Cir. 2000) ("one-year statute of limitations leaves habeas petitioners with some reasonable opportunity to have their claims heard on the merits"); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("one-year limitations period leaves petitioners with a reasonable opportunity to have their federal claims heard.").

*Lastly*, to the extent that Plaintiff is challenging the lawfulness of his custody, his case must either be dismissed or transferred to the jurisdiction where the prisoner's immediate custodian is located. *See Bourke v. Hawk Sawyer*, 269 F.3d 1072, 1074 (D.C. Cir. 2001); *In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988); Guerra v. Meese, 786 F.2d 414 (D.C. Cir. 1986).

**B. Plaintiff's Due Process Claims Are Untenable Because Plaintiff Cannot Identify Any Constitutionally Protected Interests Upon Which His Claims Are Based.**

Plaintiff alleges that his due process rights were violated by BOP Defendants when he was terminated from Unicor for possessing out-count slips, he received insufficient overtime pay, he failed to receive certain medical care, and when Defendants Lappin and Atwood allegedly misappropriated funds from the Inmate Trust Fund. Plaintiff's allegations, however, simply do not give rise to a due process claim.

"Due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Smith v. Harvey*, --- F. Supp. 2d ---, 2008 WL 754863, at *3 (D.D.C. Mar. 21, 2008) (Roberts, J.), *quoting McManus v. District of Columbia*, 530 F. Supp. 2d. 46, 72 (D.D.C. 2007) (Kollar-Kotelly, J.). Accordingly, "[f]or a plaintiff to survive a motion to dismiss under Rule 12(b)(6), he must allege, at a minimum, that he has been deprived of either a life, liberty, or property interest protected by the due process clause." *McManus*, 530 F. Supp. 2d at

72. Quite simply, none of the purported bases for Plaintiff's due process claims rise to the level of a constitutionally protected interest.

*First*, inmates do not have a constitutional right to prison employment that would entitle them to due process protection. *See Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) ("Courts of appeals consistently have held that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest"); *James v. Quinlan*, 866 F.2d 627, 639 (3d Cir. 1989); *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986); *Ingram v. Papalia*, 804 F.2d 595-96 (10th Cir. 1986) (U.S. Constitution does not create a property interest in prison employment); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980); *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975) (finding inmate's expectation of keeping a job is not a property interest subject to due process protection).

*Second*, inmates do not have a constitutional right to receive compensation for their prison work. *Manning v. Lockhart*, 623 F.2d 536, 538 (8th Cir. 1980) ("Appellant also fails to raise a cognizable claim in protesting the non-payment of wages for his work . . . Characterized as a claim of unconstitutional deprivation of property or other fundamental right, the claim again warrants no relief."); *Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir. 1968) (prisoner has no constitutional right to be paid for his prison labor and such compensation is by grace of the state); *see also Anderson v. Morgan*, 898 F.2d 144 (Table), 1990 WL 29173, at *1 (4th Cir. 1990).

*Third*, Plaintiff lacks any protected interest in the Inmate Trust Fund. *See Wilson v. Lohman*, Civ. A. No. 06-053-KAJ, 2006 WL 694778, at *1 (D. Del. Mar. 17, 2006) (denying TRO application finding that prisoner plaintiffs lacked a likelihood of success on the merits in their claim challenging misappropriation of the Inmate Trust Fund because such plaintiffs lack a

constitutional interest in such fund). Indeed, the U.S. Constitution does not create a protected interest in specified property. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Rather, protected property interests "stem from an independent source such as state laws or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Further, Plaintiff lacks any entitlement to any specific benefits in the Inmate Trust Fund. Authority to make expenditures from the Inmate Trust Fund, including when and if to make expenditures, is in the discretion of BOP officials. Merely because that discretion is statutorily limited to benefiting inmate welfare generally, does not mean that Plaintiff has a cognizable constitutional interest in such fund.[7]

*Lastly*, inmates do not have a constitutional right to the medical treatment of their choice. *See, e.g.*, *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981). While inmates are protected under the Eighth Amendment from cruel and unusual punishment stemming from deliberate indifference to a medical need, a prisoner does not have a right to treatment of his choice. *See infra* at 30-31.

Further, to the extent Plaintiff's due process claim regarding out-count slips is based upon a failure to allow Plaintiff to rebut certain testimony, such a claim also fails. Inmates are afforded only basic procedural due process for disciplinary procedures at penal institutions. *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974). Specifically, such limited procedural due process includes advance notice of the alleged violation, a written statement from the fact finders about the evidence relied upon and the rationale behind the disciplinary action taken, and the

[7] On a similar note, various courts have held that inmates have no constitutionally protected property interest in the commissary, which is used to fund the Inmate Trust Fund. *See* *Bagwell v. Brewington-Carr*, Civ. A. No. 97-714-GMS, 2000 WL 1239960, at *2- 3 (D. Del. Aug. 25, 2000) ("an inmate has no constitutionally protected right to purchase food or other items as cheaply as possible through the prison commissary"); *Acree v. Peterson*, No. 99-1085-KI, 2000 WL 1141587, at *7 (D. Or. Aug. 1, 2000) (Inmates have been found to have "no protected property interest to purchase commissary items."); *Bennett v. Sheahan*, Civ. A. No. 99-2270, 1999 WL 967534, at *4 (N.D. Ill. Oct. 5, 1999) (no protected property interest in commissary privileges).

prisoner being allowed to present evidence in his defense, subject to the secure and orderly running of the institution. *Id.* at 563, 566. BOP's UDC hearing procedures are in line with these requirements. *See* 28 C.F.R. § 541.15. Specifically, such procedures provide that the prisoner receive the charge in advance of the hearing, that he be allowed to present evidence at the hearing, that he receive in writing the panel's decision, and that he be allowed to appeal any decision through the administrative remedy process. *See id.* As noted above, Plaintiff enjoyed each of these protections at his UDC hearing. *See supra* at 6-9.

Accordingly, because Plaintiff lacks any constitutional interest upon which his claims may be based, and he was afforded procedural due process at his UDC hearing, his due process claims should fail.

**C. Plaintiff's Equal Protection Claims Are Untenable Because Plaintiff Fails To Identify Any Classification Which Affected Him.**

Plaintiff fares no better with his equal protection claims. In essence, the equal protection guarantee requires that similarly situated persons be treated similarly. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985). The Equal Protection Clause protects from "disparity in treatment . . . between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 606, 600 (1979). To bring an action under the Equal Protection Clause, a person must show that the government has failed to "afford similar treatment to similarly situated persons." *News America Pub., Inc. v. FCC*, 844 F.2d 800, 809 (D.C. Cir. 1988). To the extent that there are meaningful differences between individuals, they are not similarly situated for equal protection purposes. *City of Cleburne*, 473 U.S. at 441. Thus, "[t]he threshold inquiry in evaluating an equal protection claim is . . . whether a person is similarly situated to those persons who allegedly received favorable treatment." *Women*

*Prisoners of the District of Columbia Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (internal quotation omitted).

Plaintiff cannot get over the threshold. Except in one circumstance, Plaintiff utterly fails to plead how he was treated differently from other prisoners, or what classification was used to treat him differently. Further, Plaintiff's sole allegation concerning differing treatment -- *i.e.*, that he was punished more harshly for possessing out-count clips than other inmates -- is unsupported, conclusory, and plainly refuted by undisputed evidence. *See supra* at 6-9. As noted above, Plaintiff had notice of the items he may possess, which did not include out-count slips, and USP Pollock has a rational basis for limiting prisoner access to such slips. *Id.* Further, Plaintiff fails to claim that his differing treatment was due to any constitutionally impermissible motive. Accordingly, Plaintiff's equal protection claims should fail. *See generally Marshall v. Reno*, 915 F. Supp. 426, 432-33 (D.D.C. 1996) (plaintiff's bald assertions of differing treatment and failure to identify constitutionally impermissible classification were insufficient to state an equal protection claim).

**D. Plaintiff Lacks Standing to Challenge Expenditures from the Inmate Trust Fund.**

In addition to lacking a constitutionally protected interest in the Inmate Trust Fund, Plaintiff lacks standing to challenge expenditures therefrom.

The Supreme Court has held that a plaintiff must: (1) demonstrate that he has suffered a "personal injury" in fact; (2) show that the injury is "fairly traceable to defendant's allegedly unlawful conduct"; and (3) the injury is "likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). The Supreme Court in *Cuno* explained that a "core component" necessary for those seeking to adjudicate claims in the federal

courts is that they actually have a "case or controversy" as required by Article III of the United States Constitution. *Id.* Plaintiff fails to establish any of these factors.

Indeed, Plaintiff's relationship vis-à-vis the Inmate Trust Fund is akin to a taxpayer's relationship with the government treasury. That is, Plaintiff contributes to the Inmate Trust Fund through markups on commissary and other prison goods (similar to a taxpayer paying taxes to the treasury), and the Inmate Trust Fund is supposed to be used to benefit the prison population as a whole (similar to the treasury purpose of benefiting its citizens). Accordingly, because it is a well established principle that a taxpayer based solely upon his taxpayer status lacks standing to challenge expenditures of the treasury, Plaintiff similarly lacks standing to challenge expenditures of the Inmate Trust Fund. *See Cuno*, 547 U.S. at 343-44 ("this Court has denied federal taxpayers standing under Article III to object to a particular expenditure of federal funds simply because they are taxpayers. . . . 'interest in the moneys of the Treasury ... is shared with millions of others; is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.'"), *quoting Frothingham v. Mellon*, 262 U.S. 447, 486-87 (1923).

Accordingly, Plaintiff lacks standing to bring his Inmate Trust Fund claims.

**E.    Plaintiff's FOIA Claim Is Insufficient As A Matter Of Law.**[8]

Plaintiff's FOIA claim should be dismissed or is ripe for summary judgment. In order to bring a claim in District Court under FOIA, a plaintiff must first exhaust administrative remedies. *Hidalgo v. FBI,* 344 F.3d 1256, 1258 (D.C. Cir. 2003). Exhaustion of FOIA

---

[8]    Plaintiff also purports to bring his FOIA claim pursuant to the Privacy Act. The Privacy Act, however, is wholly inapplicable to requests seeking non-personal information, such as the one Plaintiff alleges in this action. *See* 5 U.S.C. § 552a, *et seq.*

administrative remedies begins by making a proper request. *Carbe v. Bureau of Alcohol, Tobacco & Firearms*, Civ. A. No. 03-1658 (RMC), 2004 WL 2051359, at *8 (D.D.C. Aug. 12, 2004) ("Without a request for records, the agency cannot be held liable for having refused to release records-no such refusal occurred."). Indeed, "plaintiff's failure to file a request that comports with agency FOIA regulations constitutes failure to exhaust administrative remedies." *Flowers v. IRS*, 307 F. Supp. 2d 60, 67-68 (D.D.C. 2004); *see also Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) ("An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies."); *West v. Jackson*, Civ. A. No. 05-1441 (RMC), 2006 WL 2660610, at *3-4 (D.D.C. Sept. 15, 2006) (finding that requester failed to exhaust administrative remedies where he could not show that agency received request letter and where purported request letter was addressed to incorrect address); *Thorn v. Soc. Sec. Admin.*, Civ. A. No. 04-1282 (RJL), 2005 WL 1398605, at *3 (D.D.C. June 11, 2005) (finding failure to exhaust where requester did not submit his requests to proper address).

Even if Plaintiff's Return Receipt evidences a letter sent to former Secretary Powell, by the face of the Return Receipt itself, Plaintiff's request was incorrectly addressed. *See supra* at 11-12. Further, State Department records indicate that its FOIA office never received any FOIA request from Plaintiff. *Id.* Accordingly, Plaintiff's FOIA clam should be dismissed.[9]

[9] In any event, any failure to correctly process Plaintiff's alleged FOIA request clearly does not rise to a constitutional violation by the State Department or Defendant Rice in her individual or official capacity. *See, e.g.*, *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002) (holding FOIA is a comprehensive system to administer public rights, and dismissing *Bivens* claim predicated on the theory that a FOIA violation was a violation of the Due Process Clause).

## IV. IN THE ALTERNATIVE, THE UNDISPUTED FACTS IN THIS ACTION WARRANT SUMMARY JUDGMENT IN DEFENDANTS' FAVOR.

### A. Plaintiff's Due Process and Equal Protection Claims Concerning Count Slips, Overtime Pay and the Inmate Trust Fund Are Refuted By Undisputed Evidence.

In the alternative, summary judgment is proper on Plaintiff's claims concerning count slips, overtime pay and the Inmate Trust Fund. *First*, it is undisputed that Plaintiff was the only prisoner ever before Defendants Lair or McGowan that possessed unauthorized out-count slips, and that Plaintiff's possession of such records was a violation of Code 305. *See supra* at 6-9. These facts alone defeat Plaintiff's equal protection claim premised upon the out-count slip matter.

*Second*, it is undisputed that Plaintiff's overtime pay was calculated in accordance with BOP policy. *See supra* at 9. Indeed, the method that Plaintiff alleges was improper in his Amended Complaint is the exact method prescribed by BOP policy concerning overtime pay for piece workers. *Id.*

*Lastly*, there exists no genuine issue of material fact that Defendants Lappin and Atwood did not misappropriate the Inmate Trust Fund. Indeed, Plaintiff's purported basis for alleging such a claim is based upon a Cost Center printout that appears to set forth all BOP accounting cost centers. *See supra* at 9-10. Moreover, Plaintiff's claims were investigated and proved to be invalid. *See* Records re: Admin. Remedy No. 368107, BOP Orig. MTD at Ex. 7. Further, Plaintiff fails to allege that Defendants Lappin and/or Atwood personally spent any monies from the Inmate Trust Fund. Accordingly, because *Bivens* claims cannot be based upon *respondeat superior*, Plaintiff's Inmate Trust Fund claims should fail. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (supervisory personnel may not be forced to defend a *Bivens* action under the doctrine of *respondeat superior*).

**B. Plaintiff's Eighth Amendment Claim Concerning His Medical Treatment Is Likewise Refuted By Undisputed Evidence.**

Summary judgment is also appropriate on Plaintiff's medical treatment based-claim.

In order to prevail on an Eighth Amendment claim, Plaintiff must prove that he has a serious medical need and that the defendant acted with deliberate indifference to his serious medical needs. *Arnold v. Moore*, 980 F. Supp. 28, 34 (D.D.C. 1997), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also O.K. v. Bush*, 344 F. Supp. 2d 44, 61 (D.D.C. 2004) ("The Supreme Court has emphasized on several occasions that a claim of deficient medical care will not be cognizable under the Constitution unless a prisoner can show a level of dereliction so grave that it amounts to a 'deliberate indifference' to the prisoner's 'serious medical needs.'") (citations omitted). Deliberate indifference requires the plaintiff to prove that a prison official: (1) was deliberately indifferent in his response to the prisoner's needs; (2) intentionally denied or delayed access to medical care; or (3) intentionally interfered with the treatment prescribed. *Estelle*, 429 U.S. at 105.

A disagreement between an inmate and his doctor as to the appropriate choice of medical treatment, however, does not give rise to a constitutional violation because the right under the Eighth Amendment "to be free from cruel and unusual punishment does not include the right to treatment of one's choice." *Dias v. Vose*, 865 F. Supp. 53, 57 (D. Mass. 1994) (*quoting Layne v. Vinzant*, 657 F. 2d 468, 473 (1st Cir. 1981)); *see also O.K.*, 344 F. Supp. 2d at 61 ("a prisoner has no discrete right to outside or independent medical treatment"). Furthermore, "[t]he fact that a plaintiff feels that more should have been done for his condition is not sufficient basis for a deliberate indifference claim." *Brown v. McElroy*, 160 F. Supp. 2d 699,706 (S.D.N.Y. 2001).

As noted above, Plaintiff was examined and treated by prison staff physicians on numerous occasions regarding his alleged "flank pain." *See supra* at 10-11. Plaintiff has failed to

articulate how this care was somehow deficient. Accordingly, Plaintiff's medical treatment claim should be dismissed.

**VIII. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION.**

Historically, the District of Columbia Circuit and this Court have expressly rejected the notion that inmates incarcerated in other jurisdictions can challenge their conditions of confinement in this district simply because it is the location of the BOP Central Office. *See Starnes v. McGuire*, 512 F.2d 918, 925-926 (D.C. Cir. 1974). The BOP houses approximately 200,000 inmates in more than 100 institutions nationwide. As the D.C. Circuit has stated, "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron*, 983 F.2d at 256. Indeed, the D.C. Circuit has recognized that "many, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate." *Starnes v. McGuire*, 512 F.2d at 926.

If this action is not dismissed and summary judgment is not granted, the Court should transfer this suit to the District Court for the Western District of Louisiana, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and the witnesses, and in the interest of justice. *Id.* at 927-31 (in assessing whether transfer is appropriate in prisoner cases, the court should consider such factors as the difficulty in communicating with counsel, difficulty in transferring the prisoner, the availability of witnesses and files and speed of final resolution). Plaintiff challenges actions allegedly perpetrated and witnessed by individuals located in the State of Louisiana. Moreover, Plaintiff challenges decisions made by prison administrators who work and reside in Louisiana. As a substantial amount of the evidence and witnesses are located in Louisiana, the most appropriate forum for this suit is in the District Court for the Western

District of Louisiana. *Id.* at 931 (where testimony or files are required "the district in which the institution is located will ordinarily be the more convenient forum").

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice; or in the alternative grant summary judgment in Defendants' favor on all of Plaintiff's claims; or transfer this action. A proposed order is attached.

Dated: May 16, 2008
Washington, DC

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of May, 2008, a true and correct copy of the above Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment or to Transfer, was served upon *pro se* Plaintiff Autry Lee Jones, by first class United States mail, postage prepaid, to:

Autry Lee Jones, R52873-080
Otisville Federal Correctional Institution
P.O. Box 1000
Otisville, N.Y. 10963

Respectfully submitted,

/s/

BRIAN P. HUDAK
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7143
brian.hudak@usdoj.gov